UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Parker Shannon,

    Plaintiff,

–v–

Credit Agricole Securities (USA) Inc.,

    Defendant.

17-cv-0667 (AJN)

MEMORANDUM OPINION AND ORDER

ALISON J. NATHAN, District Judge:

This case concerns an allegedly discriminatory termination in violation of the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). The Defendant moves to dismiss the complaint, arguing that Plaintiff Parker Shannon failed to timely exhaust administrative remedies as required for his ADA claim and failed to timely file his NYSHRL and NYCHRL claims. The motion to dismiss is granted in part and denied in part.

I.    **Background**

Parker Shannon was hired by the Defendant in 2007 as Managing Director of Asia Equity Sales. Amended Complaint ("AC"), Dkt. No. 20, ¶ 24. Shannon alleges that his performance "exceeded Defendant's expectations," AC ¶ 26, and in 2008 he was offered a promotion to the position of Head of U.S. Equity Sales, AC ¶ 27.

In mid-2008, Shannon was diagnosed with Non-Hodgkin's lymphoma. AC ¶ 28. The Amended Complaint alleges that despite a "rigorous course" of treatment, Shannon continued to meet or exceed the Defendant's expectations and took on additional employment responsibilities in 2009. AC ¶¶ 29-30. However, according to the Amended Complaint, the Defendant reduced

1

Shannon's pay by $100,000 in 2009, by an additional $100,000 in 2010, and by an additional $50,000 in 2011. AC ¶¶ 31, 33, 35. According to Shannon, these actions were motivated by the Defendant's "false assumption" that his "long-term value as an employee was diminished by the fact of his diagnosis with Non-Hodgkin's lymphoma." AC ¶ 32; *see also* AC ¶¶ 34, 35.

On November 20, 2012, Shannon formally complained that he was being subjected to discrimination on the basis of his illness. AC ¶ 36. On November 29, 2012, Shannon was terminated based on Defendant's "reduction in force." AC ¶ 37. Shannon was reinstated on November 30, 2012, AC ¶ 39, but allegedly had his accounts transferred to other employees and had his salary reduced to a total of $300,000 for 2012, AC ¶ 40. On January 2, 2013, Shannon sent a letter through counsel protesting what he argued was discriminatory and retaliatory conduct. AC ¶ 41. On January 11, 2013, Defendant terminated Shannon's employment. AC ¶ 42.

On August 30, 2013, Shannon filed *pro se* a charge of discrimination and retaliation in violation of the ADA with the Equal Employment Opportunity Commission ("EEOC") against Credit Agricole CIB and CLSA Asia Pacific Markets, Inc. AC ¶¶ 8-9. According to the Amended Complaint, Shannon understood Credit Agricole CIB and CLSA Asia Pacific Markets, Inc. to be "the parent entities of his employer," and therefore the "'top level' entities to appropriately identify as Respondents in his charge." AC ¶ 10. Shannon subsequently filed another charge against CLSA Americas, Inc. on May 23, 2014 "because he believed that [company] was a successor to Respondents 'Credit Agricole CIB' and/or 'CLSA Asia Pacific Markets, Inc.'" AC ¶ 12. The Amended Complaint alleges that Shannon intended this charge to serve as an amendment to his 2013 charge, he filed the charge without the assistance of counsel, and he consulted the appropriate EEOC personnel about the May 2014 charge. AC ¶ 13. During

EEOC proceedings, Shannon was allegedly informed that his actual employer was Credit Agricole Securities, the Defendant. AC ¶ 14. As a result, he filed an identical charge with the EEOC on September 29, 2014 that named Credit Agricole Securities as a Respondent. AC ¶ 15. As with the May 2014 charge, Shannon allegedly intended the September 2014 charge to serve as an amendment to his original 2013 charge, filed the charge *pro se*, and consulted with appropriate EEOC personnel in connection with filing the charge. AC ¶¶ 16-17.

Shannon received notices of his right to sue by mail on November 1, 2016. AC ¶ 20. He initiated the present action on January 27, 2017, alleging violations of the ADA and New York state and city human rights laws. Complaint, Dkt. No. 1. The Defendant filed a motion for judgment on the pleadings, Dkt. No. 14, and the Plaintiff subsequently filed an amended complaint, *see* AC. On May 22, 2017, the Defendant filed a motion to dismiss to the Amended Complaint, arguing that Shannon cannot state a claim upon which relief can be granted because he did not timely file an EEOC charge against the Defendant. Memo. in Support of MTD ("Support"), Dkt. No. 22, at 3-4; *see also id.* at 4-5 (arguing that Plaintiff's NYSHRL and NYCHRL claims are also untimely).

## II. Legal Standard

To survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint cannot survive a motion to dismiss "where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct." *Id.* at 679. "The complaint may be dismissed only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (quoting *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

## III. Discussion

The Amended Complaint alleges violations of the ADA and violations of NYSHRL and NYCHRL. The Court concludes that it has insufficient information to dismiss Shannon's ADA claim on the ground provided by the Defendant. The Court further concludes that the Plaintiff's NYSHRL and NYCHRL claims are untimely no matter the outcome of the ADA claim and therefore dismissed these claims.

### A. ADA Claim

The Defendant moves to dismiss Shannon's ADA claim on the basis that Shannon did not file a timely EEOC charge naming the Defendant. For the reasons below, that claim cannot be decided at the motion to dismiss stage, and the motion is therefore denied.

It is a "prerequisite to commencing a Title VII action against a defendant" that the plaintiff first file a complaint naming the defendant "with the EEOC or authorized state agency." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991); *see also* 42 U.S.C. § 2000e-5(e), (f). "[T]he charge serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted). A charge must be filed with the EEOC within 300 days after filing a charge

4

with an appropriate state or local agency.[1] 42 U.S.C. § 2000e-5(e)(1); *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 133 (2d Cir. 2003).

Recognizing that EEOC charges "generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements," the Second Circuit has taken "a 'flexible stance in interpreting Title VII's procedural provisions' so as not to frustrate Title VII's remedial goals." *Johnson*, 931 F.2d at 209 (citations omitted). As a result, the Second Circuit has adopted an exception to the requirement that a defendant be named in the EEOC complaint "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Id.* To determine whether a defendant who was not named in the EEOC charge shares an identity of interest with a named party, courts consider

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209-10 (alteration in original) (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)). Courts in this District also consider whether the defendant "is cited within the body of the EEOC charge as having played a role in the discrimination" because "the Second Circuit in *Johnson* implied" that this was a relevant consideration. *Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1025 (S.D.N.Y. 1993); *see also Brodie v. N.Y.C. Transit Auth.*, No. 96-cv-6813

---

[1] Under 42 U.S.C. § 2000e-5(e)(1), a person who files a charge with the EEOC without first filing a charge with a state or local agency must so file within 180 rather than 300 days. In the present case, although the Plaintiff has not specifically alleged that he first filed a charge with a state or local agency, he argues that he "filed a timely charge of discrimination and retaliation with EEOC on August 30, 2013 (230 days following his termination)." Memo. in Opp. to MTD ("Opp."), Dkt. No. 24, at 2; *see also* AC ¶ 8. The Defendant does not specifically address in its briefing whether this initial charge was timely.

5

(LMM), 1998 WL 599710, at *7 (S.D.N.Y. Sept. 10, 1998) (considering as a relevant factor weighing against identity in interest that the defendants were not named in the body of the EEOC charge); *Fox v. City Univ. of N.Y.*, No. 94-cv-4398 (CSH), 1998 WL 273049, at *5-6 (S.D.N.Y. May 27, 1998) (considering as a relevant factor weighing in favor of identity in interest that the defendants were named in the body of the EEOC charge). When there is insufficient information at the motion to dismiss stage for a court to determine whether named and unnamed defendants share an identity of interest, it is appropriate to deny the motion to dismiss and revisit the issue on a motion for summary judgment. *See, e.g., Jackson v. N.Y.C. Transit*, No. 05-cv-1763 (FB)(LB), 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005).

Based on the parties' briefing, the Court cannot conclude whether Credit Agricole Securities shares an identity in interest with Credit Agricole CIB or CLSA Asia Pacific Markets, Inc. The Court requires additional information in order to determine which party the identity in interest factors favor. As a result, the motion to dismiss is denied.

The Court concludes that based on the allegations and evidence before it at this stage, the first factor – the ascertainability of Parker's employer – favors the Plaintiff. The employment agreement and offer letter Parker initially received from the Defendant – which is incorporated by reference in the Amended Complaint, AC ¶¶ 24-25, and attached as an exhibit by the Defendant, Agreement, Dkt. No. 23-2, Offer Letter, Dkt. No. 23-3 – both list Shannon's employer as "Calyon Securities (USA) Inc.," which is identified as being part of "Credit Agricole Group." *See* Agreement at CAS000005; Offer Letter at CAS000008. Neither document mentions Credit Agricole Securities, much less identifies Credit Agricole Securities as Shannon's employer. In addition, neither party has explained anywhere in its briefing on the present motion to dismiss what Calyon Securities is or how that company is (or is not) related to

the Defendant. On the other hand, the termination letter sent by the Defendant to Shannon on November 29, 2012 – incorporated by reference in the Amended Complaint, AC ¶ 37, and attached as an exhibit by the Defendant, Letter, Dkt. No. 23-1 – states that it was sent by "Credit Agricole Securities (USA) Inc. Human Resources." Letter at 185. A third relevant piece of information is the Defendant's statement in its reply memorandum that, although Credit Agricole Securities was Shannon's immediate employer, "[a]s Shannon knows, an Asia-based entity called CLSA made all the decisions that affected Shannon's employment." Reply, Dkt. No. 25, at 3 n.3. The Defendant does not specify whether CLSA is CLSA Asia Pacific Markets, Inc., which Shannon listed as his employer on his initial EEOC complaint. *See* AC ¶ 10. Considered together, this information suggests that the Defendant is part of a group of corporations in which the roles of each entity "are not easily determined; they are overlapping and somewhat unclear." *Fox*, 1998 WL 273049, at *6. Under such circumstances, it is appropriate to find that the first factor weighs in favor of the Plaintiff, even if he "could have named the [unnamed defendant] explicitly in [his] charge." *Id.*

The Court concludes that the second factor – the similarity of the interests of the Defendant and the defendants named in the EEOC charge – cannot be decided on the briefing provided to the Court. A similarity of interests may exist if the relationship between the named and unnamed defendants are "a parent company and its subsidiary" *if* the parent company exercises decisionmaking power over personnel decisions or other relevant policymaking. *Brodie*, 1998 WL 599710, at *6 (listing, as examples where a parent and subsidiary shared an identity in interest, *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241-42 (2d Cir. 1995), "where the parent approved all personnel decisions by its subsidiary and thus had the same interests with regard to reconciliation and compliance," and *Dortz v. City of New York*, 904 F.

7

Supp. 127, 143 (S.D.N.Y. 1995), "where employees of both entities shared responsibility in providing services and in policy-making and where the [subsidiary] was bound by [the parent's] policies on discrimination"). In the present case, there is nothing in the record to suggest what decisionmaking power either Credit Agricole CIB or CLSA Asia Pacific Markets, Inc. wields, if any, over the Defendant. As a result, discovery is necessary before the Court can determine whether Credit Agricole CIB or CLSA Asia Pacific Markets, Inc. had such similar interests as the Defendant that it "would be unnecessary to include [Credit Agricole Securities] in the EEOC proceedings." *Johnson*, 931 F.2d at 209-10.

The Court concludes that the third factor – actual prejudice – also favors the Plaintiff. The third factor asks whether Credit Acricole Securities' *"absence from the EEOC proceedings* resulted in actual prejudice." *Id.* at 210 (emphasis added). In this case, however, the Defendant actually *did* participate in EEOC proceedings with Shannon after he filed his third EEOC charge. Reply at 5; *see also* Opp. at 7-8; AC ¶¶ 15, 19. Because the purpose of the actual prejudice factor is to ensure that the employer was not denied an opportunity to engage in conciliation before litigation, an employer cannot be prejudiced where it engaged in such conciliation. *Cf. Brodie*, 1998 WL 599710, at *7 ("[T]he EEOC apparently conducted no investigation and made no attempts at conciliation in Brodie's case. In general, where the EEOC makes no such efforts, courts will find that the unnamed party has experienced no prejudice."). Moreover, the Defendant's counsel from Hogan Lovell was also counsel to Credit Agricole CIB and CLSA Asia Pacific Markets, Inc., which supports the inference that the Defendant was aware of the EEOC proceedings. If the actual employer "has been aware of the proceedings from their inception," "there has been no prejudice" to that employer. *Fox*, 1998 WL 273049, at *6.

The Court concludes that, based on the information before it, the fourth factor – whether the unnamed party represented that its relationship with the complainant should be through the named party – weighs in the Defendant's favor. There is nothing in the present record to suggest that Credit Agricole Securities ever expressly told Shannon to contact it through either Credit Agricole CIB or CLSA Asia Pacific Markets, Inc. The Plaintiff alleges that the Defendant made such representations by providing "termination-related documentation" on Credit Agricole CIB letterhead and by "providing the address of the 'Credit Agricole CIB' building" as its address. Opp. at 8 (emphasis omitted). While such actions may have contributed to a reasonable misunderstanding as to the appropriate employer to name under the first factor above, it is not the type of express representation that the Court would consider under the fourth factor. *See, e.g., Fox*, 1998 WL 273049, at *6 (finding that the fourth factor weighed in favor of the plaintiff where the unnamed employer "all along has maintained that Fox's connection to the program was through Kish, who was named in the EEOC charge").

Finally, the Court concludes that it has insufficient information to consider whether Credit Agricole Securities was named in Shannon's original EEOC charge. That charge was not attached as an exhibit to the Amended Complaint, and the Court therefore cannot determine whether the Defendant was named in that document.

Because the Court has insufficient evidence upon which to determine whether Credit Agricole Securities shares an identity in interest with either of the parties named in Shannon's original EEOC charge, the motion to dismiss is denied.

### B. State and City Claims

The Defendant next moves to dismiss Shannon's claims arising under New York State Human Rights Law and New York City Human Rights Law on the basis that they are untimely.

The Court agrees that the claims are untimely and therefore grants the motion to dismiss with respect to these claims.

A three-year statute of limitations governs discrimination claims under both state and city law where the complainant has not filed an administrative complaint with the New York State Division of Human Rights. N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8-502(d). This three-year statute of limitations is tolled during the pendency of an administrative charge. N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(d). This applies even when the charge is filed with the EEOC rather than the state agency. *Nixon v. TWC Admin. LLC*, No. 16-cv-6456 (AJN), 2017 WL 4712420, at *2-3 (S.D.N.Y. Sept. 27, 2017) (collecting cases). However, Shannon does not argue that if the Court finds that the Defendant shared an identity in interest with a party identified in Shannon's 2013 EEOC charge, the charge would toll the statute of limitations for his state and city claims. In fact, Shannon makes no argument in his memorandum in opposition to the motion to dismiss related to his claims arising under NYSHRL or NYCHRL. Because the Plaintiff appears to have abandoned these claims by providing no justification as to why the claims are timely, the Court concludes that the statute of limitations was not tolled. As a result, his NYSHRL and NYCHRL claims are dismissed as untimely because they were filed more than four years after his termination.

## IV. Conclusion

The motion to dismiss is denied at to Count 1 of the Amended Complaint and granted as to Counts 2 and 3 of the Amended Complaint. This resolves docket number 21. An initial pretrial conference in this matter will be scheduled under separate order.

SO ORDERED.

10

Dated: March 22, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge