UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PARKER SHANNON, | | Index No. 17-CV-00667 (AJN) |
| | Plaintiff, | |
| v. | | **PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO <u>LOCAL RULE 56.1</u>** |
| CREDIT AGRICOLE SECURITIES (USA), INC., | | |
| | Defendant. | |

Pursuant to Local Rule 56.1, and in response to Defendant Credit Agricole Securities (USA), Inc. ("CAS" or "Defendant") Motion for Summary Judgment (the "Motion"), Plaintiff Parker Shannon ("Shannon" or "Plaintiff"), through his undersigned counsel, respectfully submits the following counterstatement of material facts in dispute[1], which demonstrates that there are genuine issues of material facts to be tried.

Plaintiff disputes each heading and/or title that Defendants have put forth throughout their Rule 56.1 statement as they state no material fact and are put forth improperly for the sole purpose of persuasion:

## I. Plaintiff's Response to Defendant's purported, "admissible evidence that supports the material facts," in the Motion.

(a)  **Plaintiff's First Amended Complaint dated May 9, 2017 ("Am. Compl." [Dkt. 20])[2];**

### RESPONSE TO SUB-PARAGRAPH (a):

Undisputed for the purposes of the Motion.

---

[1] All statements of fact not controverted herein are "admitted," solely for the purposes of this Rule 56.1 Counter Statement in opposition to Defendant's motion for summary judgment.
[2] Defendant's Rule 56.1 assertions are bolded but not underlined throughout.

(b)   **Declaration of Jay Plourde, dated March 19, 2020 ("Plourde Decl."), and the exhibits thereto**;

**RESPONSE TO SUB-PARAGRAPH (b):**

Disputed.  The declaration of Jay Ploude, dated March 19, 2020 ("Plourde Decl."), is not, in its entirety, admissible evidence.  As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – in support of the Motion fails to comport with Local Rule 56.1 and its standards.

(c)   **Declaration of Raymond Tam, dated March 13, 2020 ("Tam Decl.")**;

**RESPONSE TO SUB-PARAGRAH (c):**

Disputed. The declaration of Raymond Tam, dated March 13, 2020 ("Tam Decl."), is not, in its entirety, admissible evidence.  As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – in support of the Motion fails to comport with Local Rule 56.1 and its standards.

(d)   **Declaration of Moira Bannon, dated March 18, 2020 ("Bannon Decl."), and the exhibits thereto**;

**RESPONSE TO SUB-PARAGRAPH (d)**:

Disputed.  The declaration of Moira Bannon, dated March 18, 2020 ("Bannon Decl."), is not, in its entirety, admissible evidence.  As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – in support of the Motion fails to comport with Local Rule 56.1 and its standards.

(e)   **Declaration of Christian Billet, dated March 13, 2020 ("Billet Decl.")**;

**RESPONSE TO SUB-PARAGRAPH (e):**

Disputed.  The declaration of Christian Billet, dated March 12, 2020 ("Billet Decl."), is not, in its entirety, admissible evidence.  As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – in support of the Motion fails

to comport with Local Rule 56.1 and its standards.

(f) **Declaration of Barbara M. Roth, dated July 1, 2020 ("Roth Decl."), and the exhibits thereto**;

**RESPONSE TO SUB-PARAGRAPH (f):**

Disputed. The declaration of Barbara M. Roth, dated July 1, 2020 ("Roth Decl."), is not, in its entirety, admissible evidence. As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – in support of the Motion fails to comport with Local Rule 56.1 and its standards. Further, the Exhibit annexed to the Roth Decl. are not, in their entirety, admissible evidence. As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – attached to a declaration that is itself not entirely admissible evidence in support of the Motion fails to comport with Local Rule 56.1 and its standards.

(g) **Excerpts of the deposition of Plaintiff dated December 21, 2018 ("Shannon Dep."), attached to the Roth Decl. as Exhibit C**;

**RESPONSE TO SUB-PARAGRAH (g):**

Undisputed for the purposes of the Motion.

(h) **Excerpts of the Fed. R. Civ. P. 30(b)(6) deposition of Donna Hayes dated January 23, 2019 ("Hayes Dep."), attached to the Roth Decl. as Exhibit D; and**

**RESPONSE TO SUB-PARAGRAPH (h):**

Disputed. The excerpts of the Fed. R. Civ. P. 30(b)(6) deposition of Donna Hayes dated January 23, 2019 ("Hayes Dep."), is not, in its entirety, admissible evidence. As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – in support of the Motion fails to comport with Local Rule 56.1 and its standards.

(i) **Excerpts of the Fed. R. Civ. P. 30(b)(6) deposition of Jared Merlin dated January 23, 2019 ("Merlin Dep."), attached to the Roth Decl. as Exhibit E.**

**RESPONSE TO SUB-PARAGRAPH (i):**

Disputed.  The excerpts of the Fed. R. Civ. P. 30(b)(6) deposition of Jared Merlin dated January 23, 2019 ("Merlin Dep."), is not, in its entirety, admissible evidence.  As such, Defendant's reliance on inadmissible evidence – each instance of which is addressed in turn below – in support of the Motion fails to comport with Local Rule 56.1 and its standards.

**II.   Plaintiff's Responses to Each of Defendant's Purported Statements of Undisputed Facts.**

1.   **The sole defendant in this case, CAS, is a New York corporation, a licensed U.S. broker-dealer and a wholly owned subsidiary of French banking corporation Credit Agricole Corporate and Investment Bank ("CACIB").  (Merlin Dep. at 14.)**

**RESPONSE TO SUB-PARAGRAPH 1:**

Not disputed for the purposes of the Motion.

2.   **The business activities of CAS,[3] at all relevant times, consisted of U.S. fixed-income markets, U.S. bond origination and equity origination, and the clearing of U.S. transactions on behalf of affiliates and other broker-dealers.  (*Id*. at 6.)**

**RESPONSE TO SUB-PARAGRAPH 2:**

Disputed.  Defendant's citation to Page 6 of the Merlin Dep. Does not support this purported statement of undisputed fact.  *Id.* at 6 ("Q. Can you do your best to give us a general description of the general business purpose of CAS ….").  Further, Defendant's purported statement of undisputed fact is refuted by evidence in the record.  *See e.g., Id.* at 7 ("Q. Did any of CAS' employees do business in Asia?  Mr. Baron: Objection to form. You can answer. A. Yes.")*.*

3.   **CAS did no business in Asia; it operated solely in the U.S.  (*Id*. at 7, 9.)**

---

[3] CAS was formerly known as Credit Lyonnais Securities and then Calyon Securities.  (Merlin Dep. at 23.)

**RESPONSE TO SUB-PARAGRAPH 3:**

Disputed.  Defendant's citation to Page 6 of the Merlin Dep. does not support this purported statement of undisputed fact.  Id. at 7, 9.  Further, Defendant's purported statement of undisputed fact is refuted by evidence in the record.  *See e.g.*, Id. at 7 ("Q. Did any of CAS' employees do business in Asia?  Mr. Baron: Objection to form. You can answer. A. Yes.").

4.     **At all relevant times, CLSA Limited ("CLSA") was a Hong Kong-based entity, with offices in locations including Japan, South Korea, Taiwan, China, Singapore, Australia, Malaysia, Indonesia, the Philippines, New York and London.  (Plourde Decl. at ¶ 3.)**

**RESPONSE TO SUB-PARAGRAPH 4:**

Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because Plourde Decl. at ¶ 3 contains only inadmissible hearsay that does not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. R. 3.G.v.

5.     **CLSA and CAS are separate legal entities.  (Hayes Dep. at 32.)**

**RESPONSE TO SUB-PARAGRAPH 5:**

Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because Hayes Dep. at 32 contains only inadmissible hearsay that does not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. Rule 3.G.v.  Further, this purported statement of undisputed fact is neither a statement of fact nor is it undisputed.  Rather, this purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  *See Pacenza v. IBM Corp.*, 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

6.      **The business of CLSA did not overlap with that of CAS; among other things, CLSA was the premier producer and seller of Asian equities research, which its employees marketed to institutional clients of CLSA, while CAS did not have an Asian Sales business or conduct Asian Sales activities.  (Plourde Decl. at ¶ 3; Merlin Dep. at 7, 9.)**

## RESPONSE TO SUB-PARAGRAPH 6:

Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because Plourde Decl. at ¶ 3 and Merlin Dep. At 7, 9 contain only inadmissible hearsay that does not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. Rule 3.G.v.  Further, this purported statement of undisputed fact is neither a statement of fact nor is it undisputed.  Rather, this purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  *See Pacenza v. IBM Corp.*, 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

The record in this Action directly refutes this purported statement of undisputed fact in that CAS employees, including Plaintiff, carried out business activities in Asian.  *See* Merlin Dep. at 7 ("Q. Did any of CAS' employees do business in Asia?  Mr. Baron: Objection to form. You can answer. A. Yes."); *see also e.g.,* Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition.  It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS."); *see also e.g.,* CAS000008-000009. ("Dear Mr. Shannon: we are pleased to offer you employment with Calyon Securities

(USA), Inc. (the "Company") on the following initial terms and conditions.  Position and Department Salesperson in the International Sales Asia Department."].

**CLSA Purchased Certain Administrative Services and Benefits from CAS**

       **RESPONSE TO DEFENDANT'S SUB-HEADER:**

    Disputed.  Defendant's Sub-Header is not a purported statement of undisputed fact. Rather, Defendant improperly inserts this Sub-Header into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 as part of an effort to persuade the reader as to the validity of Defendant's arguments.  *See* Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

    7.    **At all relevant times, a small percentage of CLSA's employees were based in the U.S., largely in New York.  (Plourde Decl. at ¶ 5.)  However, CLSA, a foreign broker-dealer, did not possess a U.S. broker-dealer license, without which CLSA's employees could not, under applicable regulations, interact with CLSA's institutional clients in the U.S.  (*Id*.; Billet Decl. at ¶ 4.)**

       **RESPONSE TO SUB-PARAGRAPH 7:**

    Disputed.  This purported statement of undisputed fact in Sub-Paragraph 7 is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that does not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. R. 3.G.v.

    8.    **For that reason, CLSA entered into a benefits and services agreement with CAS whereby CLSA would second its employees in the U.S. to CAS for regulatory reasons so they could interact with CLSA's institutional clients in the U.S.  (Hayes Dep. at 26; Plourde Decl. at ¶ 5 & Ex. A; Billet Decl. at ¶ 4.)**

       **RESPONSE TO SUB-PARAGRAPH 8:**

Disputed.  This purported statement of undisputed fact is neither a statement of fact nor is it undisputed.  Rather, this purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  *See Pacenza v. IBM Corp*., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).  Further, Defendant's purported statement of undisputed fact that "CLSA would second its employees in the U.S. to CAS for regulatory reasons," is refuted by the evidence in the record that Plaintiff was employed by CAS.  *See* Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition.  It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.").  Finally, this purported statement of undisputed fact is not supported by a citation to admissible evidence, because Hayes Dep. at 26 contains only inadmissible hearsay that does not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

9.      **The CLSA benefits and services arrangement was in effect at all relevant times up to and including May 24, 2013; no CLSA employees have been seconded to or otherwise associated with CAS since May 24, 2013.  (Bannon Decl. at ¶ 31.)**

**<u>RESPONSE TO SUB-PARAGRAPH 9:</u>**

Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because Plourde Decl. at ¶ 3 and Merlin Dep. at 7, 9 contain only inadmissible hearsay that does not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. Rule 3.G.v.

10.    **Pursuant to the benefits and services arrangement between CLSA and CAS, CAS provided U.S. regulatory compliance services to CLSA.   In addition, CAS provided human resources services, computer services, and benefits and payroll administration to CLSA's employees in New York.  (Bannon Decl. at ¶¶ 4-5.)  The human resources services were provided by employees of a wholly owned subsidiary of CACIB called Credit Agricole Americas Services, Inc. ("Human Resources").  (*Id.* at ¶ 2.)  CLSA reimbursed CAS for the cost of the services and benefits, plus a 15 percent service fee. (*Id.* at ¶ 5; Merlin Dep. at 38-39.)**

### RESPONSE TO SUB-PARAGRAPH 10:

Disputed.  The first sentence in this purported statement of undisputed fact is not supported by a citation to admissible evidence.   The second sentence in this purported statement of undisputed fact is not supported by a citation to admissible evidence, because Bannon Decl. ¶¶ 4, 5 contain only inadmissible hearsay that do not fall within any exception. *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. Rule 3.G.v. The third sentence in this purported statement of undisputed fact is not supported by a citation to admissible evidence, because Bannon Decl. ¶¶ 2 contains only inadmissible hearsay that does not fall within any exception.  *Id.*  The fourth sentence in this purported statement of undisputed fact is not supported by a citation to admissible evidence, because Bannon Decl. 5 and the Merlin Dep. at 38-39 contain only inadmissible hearsay that do not fall within any exception.

Defendant's purported statement of undisputed fact that "CAS provided human resources services, computer services, and benefits and payroll administration to CLSA's employees in New York," is refuted by the evidence in the record that Plaintiff was employed by CAS.  *See* Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition.  It's a legal term as used in the context of this lawsuit

and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.").

11.  **The benefits available to CLSA's U.S. employees were specified in an Employee Handbook provided by Human Resources.  (Bannon Decl. at ¶ 8 & Ex. A; Hayes Dep. at 53.)**

**RESPONSE TO SUB-PARAGRAPH 11:**

Disputed.  The evidence in the record refutes Defendant's purported statement of undisputed fact that the "benefits available to CLSA's U.S. employees," can be found in the Plaintiff's handbook, because the Summary of the Plaintiff's handbook annexed to Bannon's Decl. as Exhibit A reads, "Summary This handbook presents information and guidelines regarding duties, benefits and general operations for personnel of CREDIT AGRICOLE CIB. Target Readers: - for action: - for information: CREDIT AGRICOLE CIB Personnel.  Scope CREDIT AGRICOLE CIB."

The evidence in the record also refutes Defendant's purported statement of undisputed fact that the "benefits available to CLSA'S U.S. employees," by the fact that Plaintiff was employed by CAS.  *See* Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition.  It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS."); see also e.g., CAS000008-000009.

**CAS Made No Decisions Concerning CLSA Employees**

**RESPONSE TO DEFENDANT'S SUB-HEADER:**

Disputed.  Defendant's Sub-Header is not a purported statement of undisputed fact. Rather, Defendant improperly inserts this Sub-Header into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 as part of an effort to persuade the reader as to the validity of Defendant's arguments.  *See* Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

**12.  CLSA alone made all decisions on hiring, salary, bonus, incentive compensation, discipline, performance reviews, titles, job duties, promotion and discharge with respect to CLSA employees located in the U.S.  (Plourde Decl. at ¶ 8; Hayes Dep. at 43-45; Shannon Dep. at 208: (never received a performance appraisal by CAS).)  CAS played no role in any of those decisions for any CLSA employee, including Shannon.  (Plourde Decl. at ¶ 8; Hayes Dep. at 39, 40, 63-65, 99.)**

**RESPONSE TO SUB-PARAGRAPH 12:**

Disputed.  The evidence in the record directly refutes this purported statement of undisputed fact, because Francois Pages, CAS' Chief Executive Office,[4] possessed and exercised the ultimate authority in regard to hiring Plaintiff.  *See* CAS000041-000042 ("From Cox, Kelly (CALYON) … Francois, Please indicate your approval to hire Parker Shannon as an addition to CLSA, based on the terms outlined below: … From Pages, Francois (CALYON) … Agreed FP.)

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a <u>Salesperson</u>," with CAS. *See* CAS000005-000007, CAS000008-000009.

---

[4] At the time CAS hired Plaintiff, CAS did business under the name Calyon Securities (USA), Inc.  *See* Hayes Dep. 31-32 ("Q. What is Clayon Securities (USA), Inc.? A. Clayon Securities was the former name of the broker/dealer. … Q: If was the former, what is it currently? A. It is now Credit Agricole Securities.  Q: Was [Plaintiff] employed by Calyon Securities (USA)? A. Yes.")

The evidence in the record also directly refutes this purported statement of undisputed fact, because Jay Plourde, a CAS Executive Director, counter-signed Plaintiff's 2008 performance review.  *See* CAS0000567, CAS000577 ("U.S. Broker-Dealer CALYON SECURITIES (USA), INC. By: Jay C. Plourde Title: Executive Director."); *see also* CAS000012, CAS000016.

The evidence in the record also directly refutes this purported statement of undisputed fact, because Plaintiff's employment was "contingent upon …[Plaintiff's] agreement to comply with the Employee Handbook, as it may be amended from time to time …," which was issued by Credit Agricole Corporate & Investment Bank (who owned 100% of CAS) and governed the conduct of CAS's employees, including Plaintiff.  *See* CAS 000061; *see also* CAS000853.

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS's November 29, 2012, correspondence evidences a role that CAS played in CAS's determination that Plaintiff's "employment [would] cease on or before December 31, 2012."  *See* SP000978-SP000979.

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. Rule 3.G.v.

13. **CLSA alone selected individuals to be hired in the U.S.  (Plourde Decl. at ¶ 8.)  After CLSA made a hiring decision, a CAS representative would add the new CLSA employee in the U.S. to the CAS administrative systems – including payroll, information technology and compliance – pursuant to CAS's contractual arrangement with CLSA. (Bannon Decl. at ¶ 6; Hayes Dep. at 40.)**

**RESPONSE TO SUB-PARAGRAPH 13:**

Disputed.  The evidence in the record directly refutes this purported statement of undisputed fact, because Francois Pages, CAS' Chief Executive Office, possessed and exercised the ultimate authority in regard to hiring Plaintiff.  See CAS000041-000042 ("From Cox, Kelly (CALYON) … Francois, Please indicate your approval to hire Parker Shannon as an addition to CLSA, based on the terms outlined below: … From Pages, Francois (CALYON) … Agreed FP.)

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS. See CAS000005-000007, CAS000008-000009.

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

14.  **CLSA management in Asia provided direction and oversight of CLSA employees in the U.S.  (Plourde Decl. at ¶ 10.)**

**RESPONSE TO SUB-PARAGRAPH 14:**

Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contains only inadmissible hearsay that do not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. Rule 3.G.v.

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS. See CAS000005-000007, CAS000008-000009.

The evidence in the record also directly refutes this purported statement of undisputed fact, because Jay Plourde, a CAS Executive Director, counter-signed Plaintiff's 2008

performance review.  *See* CAS0000567, CAS000577 ("U.S. Broker-Dealer CALYON SECURITIES (USA), INC. By: Jay C. Plourde Title: Executive Director."); *see also* CAS000012, CAS000016.

The evidence in the record also directly refutes this purported statement of undisputed fact, because Plaintiff's employment was "contingent upon …[Plaintiff's] agreement to comply with the Employee Handbook, as it may be amended from time to time …," which was issued by Credit Agricole Corporate & Investment Bank (who owned 100% of CAS) and governed the conduct of CAS's employees, including Plaintiff.  *See* CAS 000061; *see also* CAS000853.

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS's November 29, 2012, correspondence evidences a role that CAS played in CAS's determination that Plaintiff's "employment [would] cease on or before December 31, 2012."  See SP000978-SP000979.

15.  **The work CLSA's U.S.-based employees performed and the revenues they generated were exclusively for the benefit and account of CLSA.  (*Id*. at ¶ 9.)  CAS received no benefit from revenues generated by CLSA employees.  (*Id.*)**

**RESPONSE TO SUB-PARAGRAPH 15:**

Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contains only inadmissible hearsay that do not fall within any exception.  *See* Fed. R. Evid. 801-803; *see also* Fed. R. Civ. P. 56(c)(2); *see also* AJN Indv. Rule 3.G.v.

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  *See* Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS. See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes Defendant's purported statement of undisputed fact, because Plaintiff was employed by CAS. *See* Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

16.   **CAS did not assign work or responsibilities to CLSA employees.  (*Id*. at ¶ 10.)  CLSA employees performed no work or services for CAS.  (*Id*.; Tam Decl. at ¶ 4.)**

**RESPONSE TO SUB-PARAGRAPH 16:**

Disputed.  The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS.  See CAS000005-000007, CAS000008-000009.

The evidence in the record also directly refutes this purported statement of undisputed fact, because Jay Plourde, a CAS Executive Director, counter-signed Plaintiff's 2008 performance review.   See CAS0000567, CAS000577 ("U.S. Broker-Dealer CALYON SECURITIES (USA), INC. By: Jay C. Plourde Title: Executive Director."); see also CAS000012, CAS000016.

The evidence in the record also directly refutes this purported statement of undisputed fact, because Plaintiff's employment was "contingent upon …[Plaintiff's] agreement to comply with the Employee Handbook, as it may be amended from time to time …," which was

issued by Credit Agricole Corporate & Investment Bank (who owned 100% of CAS) and governed the conduct of CAS's employees, including Plaintiff.  See CAS 000061; see also CAS000853.

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS's November 29, 2012, correspondence evidences a role that CAS played in CAS's determination that Plaintiff's "employment [would] cease on or before December 31, 2012."  See SP000978-SP000979.

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exceptions.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the purported declarant lacks the personal knowledge necessary to make such a declaration.  This purported statement of undisputed fact is lay opinion testimony not "rationally based on the witness's perception."  *See* Fed. R. Evid. 701.

17. **CAS did not review the performance of CLSA employees, authorize their expenses, or make any decisions about the business they conducted.  (Plourde Decl. at ¶ 13.)**

**RESPONSE TO SUB-PARAGRAPH 17:**

Disputed. The evidence in the record also directly refutes this purported statement of undisputed fact, because Jay Plourde, a CAS Executive Director, counter-signed Plaintiff's 2008 performance review.  See CAS0000567, CAS000577 ("U.S. Broker-Dealer CALYON SECURITIES (USA), INC. By: Jay C. Plourde Title: Executive Director."); see also CAS000012, CAS000016.

This purported statement of undisputed fact is not supported by a citation to

admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exceptions.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

18.  **The performance evaluations of U.S.-based CLSA employees were prepared by CLSA managers using forms bearing the name "CLSA" that were created and provided by CLSA, and the evaluation process was supervised by Laurie Young, CLSA's Global Human Resources Head, who was located in Hong Kong.  (*Id*.)**

**RESPONSE TO SUB-PARAGRAPH 18:**

Disputed. The evidence in the record also directly refutes this purported statement of undisputed fact, because Jay Plourde, a CAS Executive Director, counter-signed Plaintiff's 2008 performance review.  See CAS0000567, CAS000577 ("U.S. Broker-Dealer CALYON SECURITIES (USA), INC. By: Jay C. Plourde Title: Executive Director."); see also CAS000012, CAS000016.

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exceptions.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

19.  **Decisions concerning CLSA employees' salaries and bonuses were made solely by CLSA, with no input by CAS.  (*Id*. at ¶ 11.)**

**RESPONSE TO SUB-PARAGRAPH 19:**

The evidence in the record directly refutes this purported statement of undisputed fact, because Francois Pages, CAS' Chief Executive Office, possessed and exercised the ultimate authority in regard to hiring Plaintiff.  See CAS000041-000042 ("From Cox, Kelly (CALYON) … Francois, Please indicate your approval to hire Parker Shannon as an addition to CLSA, based on the terms outlined below: … From Pages, Francois (CALYON) … Agreed

FP.)

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS. See CAS000005-000007, CAS000008-000009.

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

20.  **U.S.-based CLSA employees had CLSA (not CAS) email addresses and email signatures.  (*Id.* at ¶ 14.)  U.S.-based CLSA employees had CLSA (not CAS) telephone numbers, and persons answering their telephones informed callers that they had reached CLSA (not CAS).  (*Id.*)**

**RESPONSE TO SUB-PARAGRAPH 20:**

Disputed.  The evidence in the record also directly refutes this purported statement of undisputed fact.  See Plaintiff 042 ("Peter Newman Managing Director-Head of US Sales CLSA Asia-Pacific Markets / Credit Agricole Securities …").

21.  **The client information systems (called CIS and Client Live) used by CLSA personnel were located in Hong Kong and were not used by or accessible to CAS employees.  (*Id.* at ¶ 15; Merlin Dep. at 40.)**

**RESPONSE TO SUB-PARAGRAPH 21:**

Disputed.  Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contains only inadmissible hearsay that do not fall within any exception. See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

The evidence in the record also directly refutes this purported statement of undisputed

fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS. See CAS000005-000007, CAS000008-000009.

The evidence in the record also directly refutes this purported statement of undisputed fact. *See* Shannon Dep. 321 ("Q. What does "CIS" as referred to in the first paragraph? A. "CIS" stands for Customer Information System, and its basically our customer database. So all of our activity occurs – when we make a call, it automatically logs, when we send an email, it automatically logs to the clients. Clients are mapped to see how often you contact them, request that they make, all of the contacts that you make, and all of the commission flows through that. So everything you want to know about sales/client relationships is in CIS.")

The evidence in the record also refutes Defendant's purported statement of undisputed fact, because Plaintiff was employed by CAS. See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS. Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

The evidence in the record also directly refutes this purported statement of undisputed fact. *See* Merlin Dep. at 9-10 ("Q: Did CAS employees input information in a client information system? A: Yes.").

The evidence in the record also directly refutes this purported statement of undisputed fact. *See e.g.,* Plaintiff 139 ("11.3 Comments (by Manager) Parker is an avid user of CIS and should be tutor in the system to both junior and senior staff on the desk.")

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed

fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

**Plaintiff's Employment**

**RESPONSE TO DEFENDANT'S SUB-HEADER:**

Defendant's Sub-Header is not a purported statement of undisputed fact.  Rather, Defendant improperly inserts this Sub-Header into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 as part of an effort to persuade the reader as to the validity of Defendant's arguments.  *See Pacenza v. IBM Corp.*, 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

22.  **Shannon was initially employed by CLSA from 2001-2004, and CLSA rehired him as a salesman and Korea/Taiwan specialist in 2007.  (Plourde Decl. at ¶ 4.) CLSA was the premier producer and seller of Asian equities research.  (*Id.* at ¶ 3.) Shannon's 2007 offer letter from CLSA stated that he would be seconded to CAS (then called "Calyon Securities (USA), Inc.") but his "employer at all times will remain CLSA" Limited.  (*Id.* at ¶ 6 & Ex. A.)  The same provision was contained in the offer letters of all CLSA employees in the U.S.  (*Id.*)**

**RESPONSE TO SUB-PARAGRAPH 22:**

Disputed.  The evidence in the record directly refutes the first sentence of this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS.  See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes the first sentence of this purported statement of undisputed fact, because Plaintiff was employed by CAS.  See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal

perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

The second sentence of this purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citation in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

It is undisputed for the purposes of the Motion that Exhibit A to the Plourde Dec. stated that Plaintiff would be seconded to CAS (then called "Calyon Securities (USA), Inc.") and contained the words "Your employer at all times will remain CLSA."  To the extent Defendant are making an argument about what, if any, the conclusion(s) that can or should be derived Plaintiff disputes this purported statement of undisputed fact as improper arguments and conclusions inserted into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

The fourth sentence of this purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

23.    **When he was rehired by CLSA in 2007, Shannon reported to Head of Asian Equities Jay Plourde.  He also had a reporting line to the U.S. Head of Asia Sales – who initially was Tim McKenna and then, beginning on or about July 1, 2010, was Ray Tam. (*Id*. at ¶ 4; Tam Decl. at ¶¶ 2-3.)**

**RESPONSE TO SUB-PARAGRAPH 23:**

Disputed.   The evidence in the record directly refutes the first sentence of this

purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS.  See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes the first sentence of this purported statement of undisputed fact, because Plaintiff was employed by CAS.  See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

The Second Sentence of this purported statement of undisputed fact is by itself not disputed for purposes of this Motion.

24.   **McKenna, Tam and Plourde were each appointed to their positions by CLSA's Global CEO Jonathan Slone in Hong Kong.  (Plourde Decl. at ¶ 7.)  CAS played no role in those appointments.  (Plourde Decl. at ¶ 8.)**

**RESPONSE TO SUB-PARAGRAPH 24:**

The evidence in the record refutes this purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

25.   **CAS had no employee who, like CLSA's Shannon, analyzed and prepared reports on Korea and/or Taiwan or who sold Asian equities research to CLSA's institutional clients.  (Hayes Dep. at 56, 114-15, 148.)  CAS had no Asia Sales business. (Merlin Dep. at 9.)**

**RESPONSE TO SUB-PARAGRAPH 24:**

Disputed. The evidence in the record directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS and his position as a CAS Employee was that of a "Salesperson in the International Sales Asia Department." See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes the first sentence of this purported statement of undisputed fact, because Plaintiff was employed by CAS. See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS. Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

26.   **The essential duties of Shannon's position included research and review of financial data; reviewing global, political and financial news; frequently emailing and calling on CLSA clients; compiling research highlights tailored to each CLSA client; analyzing and synthesizing research; and traveling to bring Asian clients of CLSA to meet with portfolio managers at CLSA clients in the U.S. (Shannon Dep. at 31-33, 34-35, 80.)**

**RESPONSE TO SUB-PARAGRAPH 26:**

Disputed. This purported statement of undisputed fact's use of "CLSA clients," improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1. See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007)

This evidence in the record also refutes the first sentence of this purported statement

of undisputed fact.  See Shannon Dep. at 31 ("Q. Did your job with **CAS** and CLSA require you to review research and financial market data? A. That's right.") ("Q. Could you have done your job at **CAS** or CLSA without reviewing global and financial news? A. Probably not.") ("Could you have done your job at **CAS** or CLSA without email and calling on your clients frequently? A. No.") (emphasis added.)

27.   **Shannon elected to participate in certain benefits that were made available to him under the services agreement between CLSA and CAS.  (Bannon Decl. at ¶ 7.)**

**RESPONSE TO SUB-PARAGRAPH 27:**

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

28.   **In 2008 Shannon was diagnosed with a form of cancer called non-Hodgkin's lymphoma.  (Am. Compl. ¶ 28.)**

**RESPONSE TO SUB-PARAGRAPH 28:**

Undisputed for the purposes of the Motion.

29.   **After learning of Shannon's diagnosis, Plourde told Shannon to take as much time off as he needed to take care of his health.  (Plourde Decl. at ¶ 17 & Ex. C.) Plourde respected and supported Shannon, as did others at CLSA, including CEO Slone. (*Id.*)**

**RESPONSE TO SUB-PARAGRAPH 29:**

The first sentence of this purported statement of undisputed fact is not in dispute for the purpose of the Motion.

The second sentence of this purported statement of undisputed fact is disputed.  The second sentence of this purported statement of undisputed fact is not supported by a citation to

admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception. See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

30. **In connection with Shannon's treatment for cancer beginning in 2008, he lost his hair, but within a year it had grown back. (Plourde Decl. at ¶ 18; Tam Decl. at ¶ 6; Shannon Dep. at 259.)**

<u>RESPONSE TO SUB-PARAGRAPH 30:</u>

Undisputed for the purposes of the Motion.

31. **By sometime in 2010, Plourde and Tam each believed that Shannon no longer had lymphoma. (Plourde Decl. at ¶ 19; Tam Decl. at ¶ 7.) At CLSA's New York office Christmas party at Lucky Strike in December 2010, Plourde addressed CLSA's New York employees, discussing the fact that Shannon had beaten cancer and referring to him as a hero. Shannon was present when his colleagues applauded and cheered Plourde's announcement and did not disagree with anything Plourde said. (Plourde Decl. at ¶ 19.)**

<u>RESPONSE TO SUB-PARAGRAPH 31:</u>

Disputed. The evidence in the record refutes the first sentence of this purported statement of undisputed fact. See Shannon Dep. at 219-220 ("Q. What exactly did you say to Jay and Allan at this meeting about your cancer? A. I said I was in a protected class as a cancer patient, and Allan, who I never met before, said, "That's news to me," okay. Jay is saying it's news to us here and later claimed that he knew I had it in 2008, but that was absolutely wrong. That's an unequivocal lie. We talked about this a lot. He knew I was going through issues, he knew I was asking for a reasonable accommodation, he knew I had cancer, he knew I had disabilities from the side effects. Q. When was the last time, prior to November 2012, that you had a conversation with Kay Plourde about your medical status? A. I mean, I don't recall

exactly, but I know in 2012, we discussed it a lot, and its in you email record, too.  Q. What do you recall telling Jay Plourde in emails about your medical condition? A. I am only going to speculate. It's in the record. I remember telling him – this is something he checked in on with me a lot.  I was out of the officer very Tuesday even in remission to get infusions.  For four years, he knew I was out of the officer, right.  So he knows it doesn't go away.  He didn't read my EPT scans, that was private, but he knows I was getting treatment every Tuesday morning for a half day."); *see also* Shannon Dep. at 184-185 ("Q. Did Jay Plourde know you had Tuesday appointments? A. Yes.  Q. What is the basis of your belief that he knew that?  A. When he required everybody to let Mae Chan know when I would be out of the office at all times.  Q. Did you let Mae Chan known when you had doctor appointments? A. Either Mae Chan or Ray Tam, but usually Mae, by Bloomberg.  You could check Bloomberg if it's not on the emails.  Q. Did you tell anybody what the Tuesday appointments were for? A. I don't recall, but I mean, I am sure it was discussed at some point that I was getting infusions by a trial drug.")

This remainder of this purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

32.   **Korea and Taiwan were the two countries for which Shannon had acted as a "specialist" and about which Shannon wrote reports and analyses throughout his CLSA employment.  (Plourde Decl. at ¶ 20 & Ex. D.)  Shannon testified that he was the Korea and Taiwan specialist for six or seven accounts, and the key relationship manager for five accounts.  (Shannon Dep. at 94-95.)**

## RESPONSE TO SUB-PARAGRAPH 32:

Disputed.  The evidence in the record refutes this purported statement of undisputed

fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS and his position as a CAS Employee was that of a "Salesperson in the International Sales Asia Department."  See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes this purported statement of undisputed fact because Plaintiff was employed by CAS.  See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition.  It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

The evidence in the record also refutes this purported statement of undisputed fact. *See* Shannon Dep., 93-94 ("Q. Which accounts were you the key relationship manager for? A. Fidelity, Principal, Lazard; BNP and State Street.  Those were the five that I was doing key relationship manager work on.  And that was the most you could handle on anybody.  Nobody did more than that.. Q. Okay.  And for whom were you the Korea specialist? A. See, that was – I forgot, The Boston Company, Batterymarch, GE.  Now, I also did the Korea/Taiwan specialist for my KRM accounts, but I also did China with them, I also did Southeast Asia with them, like Malaysia, I did more markets with them.  I always brought in somebody for India, and Japan and Australia, but the rest of it is I had some cross pollination with Hong Kong market, China market.  They adapted well with Taiwan and Kores.  Q. You were the key relationship manager for five? A. Mm-hmm. Q. You were the Korean specialist for those give plus on or two others? A. There was probably six or seven in total. Q. Including the five that you were KRM for? A. No, not including the five.  I had five and maybe six or seven – Q. Of just Korea? A. – of just Korea and Taiwan. Q. Okay. A. There was nothing specifically

Korean."

33. **CLSA had been economically successful until 2008, when the entire industry was hit hard by the global financial crisis.  For the next three years, business— as well as salary and bonus compensation for Shannon and his colleagues—declined at CLSA and other firms in the industry.  (Plourde Decl. at ¶ 21.)  By 2011, when CLSA's economic situation had not improved, senior management in Hong Kong began to discuss a restructuring of the business globally, including reductions in the number of employees and in costs at all locations, including New York.  (*Id*.; Tam Decl. at ¶ 9.)**

### RESPONSE TO SUB-PARAGRAPH 33:

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exceptions.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the purported declarant lacks the personal knowledge necessary to make such a declaration.  This purported statement of undisputed fact is lay opinion testimony not "rationally based on the witness's perception."  See Fed. R. Evid. 701.

34. **Plourde argued against most of the New York job cuts proposed by Hong Kong management.  (Plourde Decl. at ¶¶ 23-24.)  Nonetheless, CLSA's senior management in Hong Kong continued to seek the discharge of some New York employees, and cuts occurred in 2011 and 2012.  (*Id*. at ¶ 24.)**

### RESPONSE TO SUB-PARAGRAPH 34:

Disputed.  The evidence in the record directly refutes this purported statement of undisputed fact.

This purported statement of undisputed fact is not supported by a citation to

admissible evidence, because the citations in support of this purported statement of undisputed

fact contain only inadmissible hearsay that do not fall within any exceptions.  See Fed. R. Evid.

801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

35.   **Plourde was a supporter of Shannon and, when CLSA management in Asia
proposed in or about 2011 that Shannon be terminated, Plourde argued vigorously in
favor of retaining Shannon.  (*Id*. at ¶ 25; Tam Decl. at ¶ 10.)**

**RESPONSE TO SUB-PARAGRAPH 35:**

This  purported  statement  of  undisputed  fact  is  not  supported  by  a  citation  to

admissible evidence, because the citations in support of this purported statement of undisputed

fact contain only inadmissible hearsay that do not fall within any exceptions.  See Fed. R. Evid.

801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

36.   **Plourde succeeded in retaining Shannon throughout 2011 and virtually all
of 2012, while some other CLSA employees were discharged.  (Plourde Decl. at ¶ 25.)**

**RESPONSE TO SUB-PARAGRAPH 36:**

This  purported  statement  of  undisputed  fact  is  not  supported  by  a  citation  to

admissible evidence, because the citations in support of this purported statement of undisputed

fact contain only inadmissible hearsay that do not fall within any exceptions.  See Fed. R. Evid.

801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

37.   **In or about October 2012, an application was filed to establish a new U.S.
broker-dealer, to be known as CLSA Americas, LLC.  (Billet Decl. at ¶ 3.)  The creation
of a U.S. broker-dealer was part of CLSA's plan to sell the entire CLSA Group to
CITICS, a company based in China.  (Plourde Decl. at ¶ 22.)  CAS played no role in the
decision to open a U.S. broker-dealer, to sell CLSA, or in the negotiation of a sale of
CLSA to CITICS.  (Merlin Dep. at 40.)**

**RESPONSE TO SUB-PARAGRAPH 37:**

Not disputed for the purposes of the Motion.

38.    **One of many decisions CLSA made at its headquarters in Hong Kong in preparation for its intended sale to CITICS was to centralize Korea- and Taiwan-related functions in the North Asia group, located in Asia.  (Plourde Decl. at ¶ 27.)  As a direct result of this decision, in or about June 2012—notwithstanding Plourde's desire to retain Shannon—Young told Plourde that Shannon's job would be eliminated.  (*Id*. at ¶¶ 25-26.)  Plourde delayed informing Shannon of the decision by CLSA in Hong Kong in the hope that its decision could be changed, but in November 2012 Young instructed Plourde to inform Shannon of the decision without further delay.  (*Id*. at ¶¶ 26-27; Shannon Dep. at 149.)**

### RESPONSE TO SUB-PARAGRAPH 38:

Disputed.  The evidence in the record refutes this purported statement of undisputed fact.  See Shannon Dep., 93-94 ("Q. Which accounts were you the key relationship manager for? A. Fidelity, Principal, Lazard; BNP and State Street.  Those were the five that I was doing key relationship manager work on.  And that was the most you could handle on anybody.  Nobody did more than that.. Q. Okay.  And for whom were you the Korea specialist? A. See, that was – I forgot, The Boston Company, Batterymarch, GE.  Now, I also did the Korea/Taiwan specialist for my KRM accounts, but I also did China with them, I also did Southeast Asia with them, like Malaysia, I did more markets with them.  I always brought in somebody for India, and Japan and Australia, but the rest of it is I had some cross pollination with Hong Kong market, China market.  They adapted well with Taiwan and Kores.  Q. You were the key relationship manager for five? A. Mm-hmm. Q. You were the Korean specialist for those give plus on or two others? A. There was probably six or seven in total. Q. Including the five that you were KRM for? A. No, not including the five.  I had five and maybe six or seven – Q. Of just Korea? A. – of just Korea and Taiwan. Q. Okay. A. There was nothing

specifically Korean."

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

39.  **Shannon does not know who made the decision to terminate his employment.  (Shannon Dep. 184.)**

**RESPONSE TO SUB-PARAGRAPH 39:**

Not disputed for the purposes of the Motion.

40.  **On November 29, 2012, Plourde met with Shannon to inform him that his position would be eliminated.  (Plourde Decl. at ¶ 28.)  When Plourde told Shannon this news, Shannon responded, "Don't you know that I have cancer?"  (*Id*.)**

**RESPONSE TO SUB-PARAGRAPH 39:**

The first sentence of this purported statement of undisputed fact is not disputed for the purposes of the Motion.

The second sentence of this purported statement of undisputed fact is disputed.  See Shannon Dep. at 219-220 ("Q. What exactly did you say to Jay and Allan at this meeting about your cancer?  A. I said I was in a protected class as a cancer patient, and Allan, who I never met before, said, "That's news to me," okay.  Jay is saying it's news to us here and later claimed that he knew I had it in 2008, but that was absolutely wrong.  That's an unequivocal lie.  We talked about this a lot.  He knew I was going through issues, he knew I was asking for a reasonable accommodation, he knew I had cancer, he knew I had disabilities from the side effects.  Q. When was the last time, prior to November 2012, that you had a conversation with Kay Plourde about your medical status?  A. I mean, I don't recall exactly, but I know in 2012, we discussed it a lot, and its in you email record, too.  Q. What do you recall telling Jay Plourde

in emails about your medical condition? A. I am only going to speculate. It's in the record. I remember telling him – this is something he checked in on with me a lot.  I was out of the officer very Tuesday even in remission to get infusions.  For four years, he knew I was out of the officer, right.  So he knows it doesn't go away.  He didn't read my EPT scans, that was private, but he knows I was getting treatment every Tuesday morning for a half day.")

41.  **Plourde responded by telling Shannon that he had no idea Shannon was ill, and he told Shannon to forget about any termination and return to work while Plourde sought another position at CLSA for Shannon.  (*Id*. at ¶ 30.)**

> **RESPONSE TO SUB-PARAGRAPH 41:**

> Not disputed for the purposes of the Motion.

42.  **While Plourde knew that Shannon had battled lymphoma a few years earlier and that Shannon was concerned his cancer might return someday, from late 2010 up to November 29, 2012 Plourde did not know that Shannon allegedly still had lymphoma.  (*Id*. at ¶¶ 19, 29 & Ex. F.)  As stated previously, Plourde had understood and announced to the New York office in late 2010 that Shannon had beaten cancer.  Since then, Shannon had rarely missed work, met frequently with clients and traveled regularly inside and outside the U.S., and Plourde believed Shannon had long ago recovered from his illness.  (*Id*. at ¶ 29.)**

> **RESPONSE TO SUB-PARAGRAPH 42:**

> Disputed. The evidence in the record refutes the first sentence of this purported statement of undisputed fact.  See Shannon Dep. at 219-220 ("Q. What exactly did you say to Jay and Allan at this meeting about your cancer?  A. I said I was in a protected class as a cancer patient, and Allan, who I never met before, said, "That's news to me," okay.  Jay is saying it's news to us here and later claimed that he knew I had it in 2008, but that was absolutely wrong.  That's an unequivocal lie.  We talked about this a lot.  He knew I was going through issues, he

knew I was asking for a reasonable accommodation, he knew I had cancer, he knew I had disabilities from the side effects.  Q. When was the last time, prior to November 2012, that you had a conversation with Kay Plourde about your medical status?  A. I mean, I don't recall exactly, but I know in 2012, we discussed it a lot, and its in you email record, too.  Q. What do you recall telling Jay Plourde in emails about your medical condition? A. I am only going to speculate. It's in the record. I remember telling him – this is something he checked in on with me a lot.  I was out of the officer very Tuesday even in remission to get infusions.  For four years, he knew I was out of the officer, right.  So he knows it doesn't go away.  He didn't read my EPT scans, that was private, but he knows I was getting treatment every Tuesday morning for a half day."); see also Shannon Dep. at 184-185 ("Q. Did Jay Plourde know you had Tuesday appointments? A. Yes.  Q. What is the basis of your belief that he knew that?  A. When he required everybody to let Mae Chan know when I would be out of the office at all times.  Q. Did you let Mae Chan known when you had doctor appointments? A. Either Mae Chan or Ray Tam, but usually Mae, by Bloomberg.  You could check Bloomberg if it's not on the emails. Q. Did you tell anybody what the Tuesday appointments were for? A. I don't recall, but I mean, I am sure it was discussed at some point that I was getting infusions by a trial drug.")

This remainder of this purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

43.  **Documents produced in discovery show that Shannon has been free of lymphoma since at least May 18, 2012.  (Roth Decl. at ¶ 20 & Ex. T ("since 5/18/12, No evidence of active lymphoma."))  Shannon testified he has had no active lymphoma since September 2012.  (Shannon Dep. at 124.)**

**RESPONSE TO SUB-PARAGRAPH 43:**

Not disputed for the purpose of this Motion.

44.   **Upon being told by Shannon on November 29, 2012 that Shannon still had cancer, Plourde became determined to find Shannon another position at CLSA.  (Plourde Decl. at ¶ 30.)**

**RESPONSE TO SUB-PARAGRAPH 44:**

Disputed. This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v

45.   **After their November 29 meeting, Shannon did as Plourde instructed – returned to his desk and continued to work with CLSA's clients.  (Shannon Dep. at 148; Plourde Decl. at Ex. G, p. 2.)**

**RESPONSE TO SUB-PARAGRAPH 45:**

Disputed.  The evidence in the record directly refutes this purported statement of undisputed fact.  *See* CAS_001406-CAS_001408.

46.   **The next day, November 30, 2012, Plourde told Young in Hong Kong about his conversation with Shannon, reporting that Shannon had said he was sick and that Plourde wanted to find another job for Shannon.  Young—a survivor of cancer himself—agreed.  (Plourde Decl., at ¶ 31.)**

**RESPONSE TO SUB-PARAGRAPH 46:**

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v

47.   **Beginning immediately, Plourde worked to identify another position for Shannon and discussed options with Shannon.  (Plourde Decl. at ¶ 32; Tam Decl. at ¶¶ 11-12; Shannon Dep. at 139, 148.)  One option—giving Shannon the new role of Head of Syndications—was consistent with syndications work Shannon had already performed for CLSA.  (Shannon Dep. at 85-86 (he started the CLSA syndicate desk "I believe it was in 2009"); Plourde Decl. at ¶ 32; Tam Decl. at ¶ 12.)**

### RESPONSE TO SUB-PARAGRAPH 47:

Disputed.  The evidence in the record directly refutes the first sentence of this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS.  See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes the first sentence of this purported statement of undisputed fact, because Plaintiff was employed by CAS.  See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

48.   **Given CLSA's plan to operate its own U.S. broker-dealer and, ultimately, to sell the entire company to CITICS, Plourde and Tam believed the Syndications role would be a good professional opportunity for Shannon.  (Plourde Decl. at ¶ 34; Tam Decl. at ¶ 13)  Plourde's goal was to keep Shannon employed until a new U.S. broker-dealer was created and CLSA was sold to CITICS, at which time Plourde expected deal flow could increase and Syndications could become very busy.  (*Id.*; Shannon Dep. at 244.)**

### RESPONSE TO SUB-PARAGRAPH 48:

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

49.   **Tam and Plourde believed Shannon was enthusiastic about this new role. (Tam Decl. at ¶ 13; Plourde Decl. at ¶ 33 & Ex. G; Shannon Dep. at 244: "I was told that the syndicate head position would be made available to me full time….")**

**RESPONSE TO SUB-PARAGRAPH 49:**

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations to Tam Decl. and Plourde Decl. in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.  Further, the portion of the Shannon Dep. cited does not support this purported statement of undisputed fact.  *See* Shannon Dep. at 244 ("Q. Did you wait to find out whether there was another position available before you applied for short term disability benefits? A. I was told that the syndicate head position would be made available to me full time, and he was looking into that.  He also said there's a possibility for research, okay.  And I said, you know, I don't think research was best suited for my – for my disability, but syndicate – he expected, he told me, with the CITICS merger, that that would – what is the word – that would result in more deall flow, that potentially the syndicate head job could be enough to be a full-time job.")

50.   **On December 13, 2012, Shannon and Plourde exchanged emails about the new Syndications position.  (Plourde Decl. at ¶ 35 & Ex. G; Tam Decl. at ¶ 15.)**

**RESPONSE TO SUB-PARAGRAPH 50:**

Not disputed for the purposes of the Motion.

51.   **At that time, Plourde and Tam did not know that only a few days later – on December 17, 2012 – Shannon would contact Human Resources to request a disability leave and to obtain the forms for both short-term and long-term disability benefits. (Plourde Decl. at ¶ 35; Tam Decl. at ¶ 15; Bannon Decl. at ¶ 10 & Ex. B at 941.)  Shannon told Human Resources on December 20, 2012 that he intended to begin disability leave in January 2013.  (Bannon Decl. at ¶ 10 & Ex. B at 959.)**

**RESPONSE TO SUB-PARAGRAPH 51:**

Disputed.   The evidence in the record directly refutes the first sentence of this purported statement of undisputed fact.  *See* CAS001086-001092.

**Shannon's Applications and Receipt of Disability Benefits**

**RESPONSE TO DEFENDANT'S SUB-HEADER:**

Defendant's Sub-Header is not a purported statement of undisputed fact.  Rather, Defendant improperly inserts this Sub-Header into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 as part of an effort to persuade the reader as to the validity of Defendant's arguments.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

52.   **One of the benefits available to CLSA's U.S. employees, under the arrangement between CLSA and CAS, was a short-term disability benefit that provided 100 percent of salary continuation for up to 26 weeks.  (Bannon Decl. at ¶ 11 & Ex. A at 16; Hayes Dep. at 90.)  Prudential was the administrator of the salary-continuation plan and, in that role, collected medical information about Shannon and was the sole**

**decisionmaker as to whether he was disabled and therefore eligible for disability benefits. (Bannon Decl. at ¶ 17.)  As with all applicants for disability leave, CAS played no role in determining whether Shannon was disabled or eligible for benefits.  (*Id.*)**

> RESPONSE TO SUB-PARAGRAPH 52:

Disputed.  The evidence in the record refutes Defendant's purported statement of undisputed fact that the "benefits available to CLSA's U.S. employees," because the Summary of the Plaintiff's handbook annexed to Bannon's Decl. as Exhibit A reads, "Summary This handbook presents information and guidelines regarding duties, benefits and general operations for personnel of CREDIT AGRICOLE CIB.  Target Readers: - for action: - for information: CREDIT AGRICOLE CIB Personnel.  Scope CREDIT AGRICOLE CIB."

53.  **Under the disability benefit plan, if a participant was not able to return to work after 26 weeks, the individual became eligible for long-term disability coverage from Prudential, pursuant to which a disabled individual could receive disability benefits until age 65.  (Bannon Decl., ¶ 12 & Ex. A.)**

> RESPONSE TO SUB-PARAGRAPH 53:

Not disputed for the purposes of the Motion.

54.  Human Resources employees, under the supervision of Moira Bannon, CAS's Head of Benefits, Payroll and International Mobility, provided Shannon with the disability forms he requested and offered to assist him with them.  Shannon told Human Resources on December 20, 2012 that he planned to begin a disability leave in January 2013.  (Bannon Decl. at ¶ 13 & Ex. B.)

> RESPONSE TO SUB-PARAGRAPH 54:

Not disputed for the purpose of the Motion.

55.  **Shannon selected January 14, 2013 as the date for his short-term disability leave to begin.  (Bannon Decl. at ¶ 19 & Ex. D.)**

**RESPONSE TO SUB-PARAGRAPH 54:**

Disputed.  The evidence in the record refutes this purported undisputed statement of fact.  *See* CAS001056 ("Hi Teresa; Sorry to confuse you.  It's not if I leave the company. If I take STD with CACIB; so I get to extend that LTD with CACIB automatically? Or will that depend on the new CLSA-CITICS LTD benefit? i.e. do I remain an employee of CACIB while on STD regardless of what CLSA does? Parker")

56.  **CAS was not aware before Shannon requested short-term disability leave in December 2012 that Shannon considered himself disabled.  (Bannon Decl. at ¶ 15; Hayes Dep. at 137.)**

**RESPONSE TO SUB-PARAGRAPH 55:**

Disputed.  The evidence in the record refutes this purported undisputed statement of fact.  See Shannon Dep. at 219-220 ("Q. What exactly did you say to Jay and Allan at this meeting about your cancer?  A. I said I was in a protected class as a cancer patient, and Allan, who I never met before, said, "That's news to me," okay.  Jay is saying it's news to us here and later claimed that he knew I had it in 2008, but that was absolutely wrong.  That's an unequivocal lie.  We talked about this a lot.  He knew I was going through issues, he knew I was asking for a reasonable accommodation, he knew I had cancer, he knew I had disabilities from the side effects.  Q. When was the last time, prior to November 2012, that you had a conversation with Kay Plourde about your medical status?  A. I mean, I don't recall exactly, but I know in 2012, we discussed it a lot, and its in you email record, too.  Q. What do you recall telling Jay Plourde in emails about your medical condition?  A. I am only going to speculate. It's in the record. I remember telling him – this is something he checked in on with me a lot.  I was out of the officer very Tuesday even in remission to get infusions.  For four years, he knew I was out of the officer, right.  So he knows it doesn't go away.  He didn't read my EPT scans, that was private, but he knows I was getting treatment every Tuesday morning

for a half day."); see also Shannon Dep. at 184-185 ("Q. Did Jay Plourde know you had Tuesday appointments? A. Yes.   Q. What is the basis of your belief that he knew that?   A. When he required everybody to let Mae Chan know when I would be out of the office at all times.   Q. Did you let Mae Chan known when you had doctor appointments? A. Either Mae Chan or Ray Tam, but usually Mae, by Bloomberg.   You could check Bloomberg if it's not on the emails. Q. Did you tell anybody what the Tuesday appointments were for? A. I don't recall, but I mean, I am sure it was discussed at some point that I was getting infusions by a trial drug."); see also

57.   **A disability leave requires that the applicant and his/her physician certify that the applicant is totally disabled from working and provide medical support for his/her inability to work.  (Bannon Decl. at ¶ 16 & Ex. A at 16.)**

### RESPONSE TO SUB-PARAGRAPH 57:

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.   See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

58.   **Shannon provided the information and medical documentation required by Prudential, and Prudential approved Shannon for short-term, and ultimately, long-term disability benefits.  (*Id*. at ¶ 18 & Ex. C.)**

### RESPONSE TO SUB-PARAGRAPH 58:

Not disputed for the purposes of the Motion.

59.   **Shannon continued to perform his job and work with CLSA clients until January 11, 2013, when he ceased work to begin a disability leave, as he had requested. (Shannon Dep. at 148; Plourde Decl. at ¶¶ 36-37 & Ex. G & H; Tam Decl. at ¶ 16; Roth Decl. ¶ 21 & Ex. U.)  Though Shannon alleges he was terminated from his employment**

on January 11, 2013 (Am. Compl. ¶ 42), in fact this was the date Shannon chose as his last day of work before he voluntarily began a disability leave.  When he began his leave on January 14, 2013, Shannon was still an employee of CLSA.  (Bannon Decl. at ¶ 19.)

### RESPONSE TO SUB-PARAGRAPH 59:

Disputed.  The evidence in the record directly refutes the first sentence of this purported statement of undisputed fact.  See CAS001086-001092.

60.    **Shannon certified in his disability benefits application to Prudential in January 2013 that he was disabled and unable to work because of "fatigue; loss of cognitive ability; anxiety; and stress." (*Id.* at Ex. C.).  Shannon testified that as of January 2013, he was unable to concentrate to read for any period of time, took a nap every afternoon, found it difficult to multitask, and had trouble with word retrieval and recalling simple facts.  (Shannon Dep. at 117, 120.)**

### RESPONSE TO SUB-PARAGRAPH 60:

Not disputed for the purpose of the Motion.

61.    **Shannon also applied for supplemental disability benefits through Mass Mutual, a second disability insurer, on February 20, 2013. In his application, Shannon states that he has been totally unable to work because of his disability as of January 14, 2013, and that "fatigue and cognitive d[y]sfunction is making travel difficult, including staying awake in client meetings; and is difficult to read research to properly influence client decisions." (Roth Decl. at ¶ 17 & Ex. P.)  Shannon testified under oath that these tasks he could not perform were essential functions of his job at CLSA.  (Shannon Dep. at 31-32, 61-63; 75, 80.)**

### RESPONSE TO SUB-PARAGRAPH 61:

Disputed.  The evidence in the record refutes this purported undisputed statement of fact, because Exhibit P attached to Roth's does not say what Defendant's claim it says.  *See*

Exhibit P to Roth Dec. ("25. Please describe briefly the duties you are unable to perform as a result of your sickness or accident, and why. Fatigue and cognitive disjunction is making travel difficult, including staying awake in client meetings, and is difficult to read research to properly influence client decisions.")

62. **Shannon's treating physician, oncologist and hematologist Dr. Richard Furman of New York-Presbyterian Hospital/Weill Cornell Medical Center, submitted a statement in support of Shannon's application to Mass Mutual for disability benefits, stating that he advised Shannon to stop working on January 11, 2013 because of Shannon's "fatigue, difficulty word finding and focus, memory recall, [and] anxiety." (Roth Decl. at  ¶ 18 & Ex. Q at Question 25.)**

RESPONSE TO SUB-PARAGRAPH 62:

Not disputed for the purpose of the Motion.

63. **In June 2013, Shannon submitted a required update on his disability status to Mass Mutual.  In it Shannon stated that he remained disabled, and he answered "NA" when asked when he expected to return to work.  (Roth Decl. at ¶ 19 & Ex. R.).**

RESPONSE TO SUB-PARAGRAPH 63:

Not disputed for the purposes of the Motion.

64. **Between January and June of 2013, Shannon also applied for Social Security Disability Insurance ("SSDI") benefits, and on July 31, 2013, the Social Security Administration awarded Shannon SSDI benefits.  The Social Security Administration determined Shannon "to be disabled as of 1/11/2013." (Roth Decl. at ¶ 13 & Ex. L at 432.)**

RESPONSE TO SUB-PARAGRAPH 64:

Disputed.  Prudential, not Plaintiff, applied to the Social Security Administration for an award to Shannon of SDI benefits.

65. **Shannon remained an employee of CLSA throughout his short-term**

disability leave.  The short-term disability benefit of salary continuation that Shannon received was available to him only because he was an employee of CLSA in the U.S.  If Shannon had ceased to be an employee on January 11, 2013, as he alleges, Shannon would have been ineligible to receive disability benefits under the CAS/CLSA arrangement. (Bannon Decl. at ¶ 19.)

### RESPONSE TO SUB-PARAGRAPH 65:

Disputed.  The evidence in the record directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS and his position as a CAS Employee was that of a "Salesperson in the International Sales Asia Department."  See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes the first sentence of this purported statement of undisputed fact, because Plaintiff was employed by CAS.  See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.")

66.   CLSA did not hire anyone to replace Shannon in the U.S.  (Plourde Decl. at ¶ 36; Tam Decl. at ¶ 17; Hayes Dep. at 144.)  Of course, neither did CAS, which had never hired an Asian salesperson, as CAS was not in the Asian equities business.  (Merlin Dep. At 9.)

### RESPONSE TO SUB-PARAGRAPH 66:

Disputed.  The evidence in the record directly refutes this purported statement of undisputed fact, because Francois Pages, CAS' Chief Executive Office,  possessed and

exercised the ultimate authority in regard to hiring Plaintiff.  See CAS000041-000042 ("From Cox, Kelly (CALYON) … Francois, Please indicate your approval to hire Parker Shannon as an addition to CLSA, based on the terms outlined below: … From Pages, Francois (CALYON) … Agreed FP.)

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS. See CAS000005-000007, CAS000008-000009.

The evidence in the record also directly refutes this purported statement of undisputed fact, because Jay Plourde, a CAS Executive Director, counter-signed Plaintiff's 2008 performance review.   See CAS0000567, CAS000577 ("U.S. Broker-Dealer CALYON SECURITIES (USA), INC. By: Jay C. Plourde Title: Executive Director."); see also CAS000012, CAS000016.

The record in this Action directly refutes this purported statement of undisputed fact in that CAS employees, including Plaintiff, carried out business activities in Asian.  See Merlin Dep. at 7 ("Q. Did any of CAS' employees do business in Asia?  Mr. Baron: Objection to form. You can answer. A. Yes."); see also e.g., Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition.  It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS."); see also e.g., CAS000008-000009. ("Dear Mr. Shannon: we are pleased to offer you employment with Calyon Securities (USA), Inc. (the "Company") on the following initial terms and conditions.  Position and Department Salesperson in the International Sales Asia Department."].

The record in also refutes the purported statement of undisputed fact, because CITIC Securties Company Limited ("CITICS") and Credit Agricole Corporate & Investment Bank ("Credit Agricole CIB") announced the execution of a sale and purchase agreement. *See* CAS000796-000798; see also CAS000850-000851.

67. **Shannon received his full salary for 26 weeks of disability under the salary continuation benefit.  (Shannon Dep. at 71, 72; Bannon Decl. at ¶ 20 & Ex. A.)**

**RESPONSE TO SUB-PARAGRAPH 67:**

Not disputed for the purpose of the Motion.

68. **At or about the end of March 2013, pursuant to the services agreement between CLSA and CAS by which CAS performed payroll administration for CLSA, CLSA instructed CAS to make bonus payments to certain CLSA employees in New York. CLSA instructed CAS to pay Shannon $140,000.  CAS deposited that amount into Shannon's account; he did not return it.  (Bannon Decl. at ¶ 21.)  At the same time, CLSA instructed CAS to tender payments of $100,000, $125,000, $150,000 and $190,000, respectively, to CLSA's four other New York-based CLSA salespersons, and CAS did so. (*Id*. at ¶ 22.)  CAS played no role in deciding whether to pay Shannon a bonus for 2012 or in setting the amount; this decision was made exclusively by CLSA.  (*Id*. at ¶ 21; Plourde Decl. at ¶ 38.)**

**RESPONSE TO SUB-PARAGRAPH 68:**

Disputed. The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS.  See CAS000005-000007, CAS000008-000009.

69. **In or about February 2013, CLSA received regulatory approval to open a new U.S. broker-dealer called CLSA Americas, LLC.  (Billet Decl. at ¶ 3.)**

**RESPONSE TO SUB-PARAGRAPH 69:**

Not disputed for the purpose of the Motion.

70.   **Thereafter, in or about May 2013, CLSA informed Bannon that CLSA employees based in the U.S. were to be severed from CAS as of the close of business on May 24, 2013.  One result of this was that CLSA employees would no longer be eligible to participate in CAS's benefits as of that date.  (Bannon Decl. at ¶ 23.)**

RESPONSE TO SUB-PARAGRAPH 70:

Disputed.  This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v.

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

71.   **As of May 24, 2013, Shannon was still on short-term disability and receiving salary continuation, and he had already applied for and been approved by Prudential for long-term disability benefits to begin in July 2013.  (*Id*. at ¶ 24.)  As of May 24, 2013, Bannon had no knowledge of CLSA's plans with respect to Shannon or any of his CLSA colleagues, all of whom were also being terminated from CAS's benefits and systems on that same date.  (*Id*. at ¶¶ 25, 31.)**

RESPONSE TO SUB-PARAGRAPH 71:

This purported statement of undisputed fact is not supported by a citation to admissible evidence, because the citations in support of this purported statement of undisputed fact contain only inadmissible hearsay that do not fall within any exception.  See Fed. R. Evid. 801-803; see also Fed. R. Civ. P. 56(c)(2); see also AJN Indv. Rule 3.G.v

72.   **On or before May 24, 2013, Bannon informed Shannon by telephone that all CLSA employees would be terminated from CAS's benefits and systems on that date.** (*Id*. at ¶ 26.)  **Since Shannon had previously applied for – and in April 2013 Prudential had already approved Shannon for – long-term disability benefits to begin in July 2013, Bannon offered to advance to Shannon the remainder of the maximum of 26 weeks of short-term salary continuation benefits in a lump sum.**  (Bannon Decl. at ¶ 27 & Ex E; Hayes Dep. at 92.)

### RESPONSE TO SUB-PARAGRAPH 72:

Disputed.  The evidence in the record refutes this purpoted statement of undisputed fact. *See* Shannon Depo, Page 71 ("Q. I'm sorry, you just testified that you received shot term disability benefits for six months from January 2013; is that correct? A. Yes. Yes, that's correct.  Morira Bannon gave me a lump sum for the final two months, so she wouldn't transition me to the new company that was being formed.")

The evidence in the record refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS.  See CAS000005-000007, CAS000008-000009.

73.   **This payment acceleration was a substantial benefit for Shannon, who otherwise would not have been eligible for salary continuation or other benefits after May 24, 2013, when he and all other U.S. CLSA employees would no longer be associated with CAS.**  (Bannon Decl. at ¶ 27; Hayes Dep. at 100, 101.)

### RESPONSE TO SUB-PARAGRAPH 73:

Disputed.  The evidence in the record refutes this purported statement of undisputed fact.  See Shannon Depo, Page 72 ("Q. What new company was being formed? A. CLSA, I don't know, LLC, something America.  I don't know the exact legal name.  CLSA went from being a department in Credit Agricole to being a separate broker dealer in July of 2013.  I was

not transitioned to the new company, and Moira Bannon terminated me as an employee of, I guess, Credit Agricole at that time and gave me a lump sum for the final two months. Q. So am I correct that you never had a lapse in benefits then? A. No, there was no lapse in benefits. There was just a lapse in the time period. Q. But you received the full six months' worth of short term disability benefits? A. I received it. Q. Did you want to be transferred to the new entity that was being formed? A. I wanted my job back, and that's where my job was going and there was no job for me to return to.")

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1. See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

74.  **After speaking with Shannon, Bannon summarized in an email to Shannon the benefits he would receive, and Shannon responded the same day to thank Bannon, saying: "your guidance has helped to make the best of a difficult situation.  My family would have lost everything" if not for the benefits provided to him.  (Bannon Decl. at ¶ 28 & Ex. E.)  Shannon ended his email to Bannon saying: "I am proud to have been part of the organization, and will always hold it in the highest regard."  (*Id.*)**

RESPONSE TO SUB-PARAGRAPH 74:

Not disputed for the purposes of the Motion.

75.  **From the first day of his disability leave on January 14, 2013 to May 24, 2013 – the date on which Shannon and all of his CLSA colleagues were terminated from CAS's systems and benefits – Shannon was paid in full, under CAS's salary-continuation benefit, the entire salary he would have received if he had continued working at CLSA during that period.  (Shannon Dep. at 71-72; Bannon Decl. at ¶¶ 20, 34.)**

RESPONSE TO SUB-PARAGRAPH 75:

The evidence in the record also directly refutes this purported statement of undisputed fact, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS. See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes the first sentence of this purported statement of undisputed fact, because Plaintiff was employed by CAS. See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS. Q. Ms. Hayes, after speaking with your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.").

76. **CAS played no role in the decision to end the relationship between CAS and CLSA personnel, including Shannon, as of May 24, 2013. (Bannon Decl. at ¶ 29; Hayes Dep. at 15, 95, 96.)**

**RESPONSE TO SUB-PARAGRAPH 76:**

Disputed. The evidence in the record refute this purported statement of undisputed fact. *See* CAS000149-000151.

77. **CAS played no role in deciding whether, and which, CLSA personnel would be hired by any other entity at any time. (Bannon Decl. at ¶ 30.)**

**RESPONSE TO SUB-PARAGRAPH 76:**

Disputed. The record refutes the purported statement of undisputed fact, because CITIC Securities Company Limited ("CITICS") and Credit Agricole Corporate & Investment Bank ("Credit Agricole CIB") announced the execution of a sale and purchase agreement. See CAS000796-000798; see also CAS000850-000851.

78. **Shannon admitted that after May 24, 2013, CAS had no employees who**

had been seconded by CLSA.   (Shannon Dep. at 252: "The jobs weren't at CAS anymore.")

### RESPONSE TO SUB-PARAGRAPH 78:

Disputed.  The record in refutes the purported statement of undisputed fact, because CITIC Securities Company Limited ("CITICS") and Credit Agricole Corporate & Investment Bank ("Credit Agricole CIB") announced the execution of a sale and purchase agreement.  See CAS000796-000798; see also CAS000850-000851.

79.  **No CLSA employees have been seconded to CAS, or participated in CAS benefits, since May 24, 2013.  (Bannon Decl. at ¶ 31.)**

### RESPONSE TO SUB-PARAGRAPH 79:

Disputed.   Disputed.  The record in refutes the purported statement of undisputed fact, because CITIC Securities Company Limited ("CITICS") and Credit Agricole Corporate & Investment Bank ("Credit Agricole CIB") announced the execution of a sale and purchase agreement.  See CAS000796-000798; see also CAS000850-000851.

80.  **CLSA CEO Slone terminated Plourde's employment effective July 2013. (Plourde Decl. at ¶ 39.)**

### RESPONSE TO SUB-PARAGRAPH 80:

Not disputed for the purposes of the Motion.

**Shannon Never Sought to Return to Work and Certified Under Penalty of Perjury that He Cannot Work**

### RESPONSE TO DEFENDANT'S SUB-HEADER:

Defendant's Sub-Header is not a purported statement of undisputed fact.  Rather, Defendant improperly inserts this Sub-Header into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 as part of an effort to persuade the reader as to the validity of Defendant's arguments.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

81.   **After completing his 26-week short-term disability leave, Shannon began to receive long-term disability benefits under a Prudential policy made available to him under the services agreement between CLSA and CAS.  (Bannon Decl. at ¶ 32 & Ex. F.) To obtain long-term disability benefits under the policy, for the first 24 months of disability payments, Shannon was required to show that he was "unable to perform the material and substantial duties of [his] own occupation due to [his] sickness or injury." (*Id.* at 9.)  Under the policy, "material and substantial duties" are specifically defined as duties that "are normally required for the performance of your own occupation; and cannot be reasonably omitted or modified." (*Id.* at 10) (emphasis added).**

**RESPONSE TO SUB-PARAGRAPH 81:**

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

82.   **After 24 months of payments, to continue receiving disability payments, Shannon was required to show that he was "unable to perform the duties of any occupation for which [he is] reasonably fitted by education, training, or experience." (*Id.* at 9.)**

**RESPONSE TO SUB-PARAGRAPH 82:**

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

83.   **Since beginning his disability leave on January 14, 2013 up to and including the date on which this Motion was filed, Shannon has never provided CAS with**

a doctor's note certifying that Shannon could return to work in any position, as required by the Employee Handbook.  (Shannon Dep. at 254, 256; Hayes Dep. at 141; Bannon Decl. at ¶ 33 & Ex. A at 16.)

**RESPONSE TO SUB-PARAGRAPH 83:**

It is not disputed for the purposes of the Motion that "[s]ince beginning his disability leave on January 14, 2013 up to and including the date on which this Motion was filed, Shannon has never provided CAS with a doctor's note certifying that Shannon could return to work in any position."  Defendant, however, then improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 the argument, "as required by the Employee Handbook."  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

84.     **Shannon has never asked CLSA (which hired him) or broker-dealer CLSA Americas, LLC if he could return to, or commence work in, any position.  (Shannon Dep. at 74, 256.)  Nor did Shannon ever contact CAS to say that he was medically able to work in any position or to request employment in any role.  (Bannon Decl. at ¶ 33.)**

**RESPONSE TO SUB-PARAGRAPH 84:**

Disputed.  The first sentence of this purported statement of undisputed fact is directly refuted by the evidence in the record, because CAS offered and Plaintiff accepted "employment as a Salesperson," with CAS.  See CAS000005-000007, CAS000008-000009.

The evidence in the record also refutes the first sentence of this purported statement of undisputed fact, because Plaintiff was employed by CAS.  See Hayes Dep. at 27-28 ("Mr. Baron: So I'm just going to state for the record I think the word "employ" is a legal definition. It's a legal term as used in the context of this lawsuit and I believe that you have already received an interrogatory response or request for admission from us that from a legal perspective acknowledges that he was employed by CAS.  Q. Ms. Hayes, after speaking with

your attorney, are there any additional information you would like to clarify for the answer that you've given to my question? A. Parker Shannon was employed by CAS.").

The second sentence of this purported statement of undisputed fact is not disputed for the purposes of the Motion.

85.   **According to Shannon's sworn testimony, since January 14, 2013 he never sought or obtained medical approval to return to work in any job, including a job at CAS, or CLSA.  (Shannon Dep. at 74: "I never asked for or received medical clearance to return to work.")**

### RESPONSE TO SUB-PARAGRAPH 85:

Not disputed for the purpose of the Motion.

86.   **Upon information and belief, CITICS finalized its purchase of CLSA on July 31, 2013.  (Plourde Decl. at ¶ 34.)**

### RESPONSE TO SUB-PARAGRAPH 86:

Not disputed for the purpose of the Motion.

87.   **Shannon remained on long-term disability under the previously referenced Prudential policy until August 26, 2015, when Prudential learned that Shannon had begun work as the CEO of a new business.   Prudential ended Shannon's disability payments around that time.  (Roth Decl. at ¶ 8 & Ex. G.)**

### RESPONSE TO SUB-PARAGRAPH 87:

Disputed.  [Need citation here.]

88.   **Shannon appealed Prudential's termination of his disability payments, and in that appeal both Shannon and Dr. Furman stated that Shannon was unable to perform work in any occupation at all and was "totally disabled."  (Shannon Dep. at 52.)**

### RESPONSE TO SUB-PARAGRAPH 88:

Disputed.  The evidence in the record refutes this purported statement of undisputed

fact.  *See* Shannon Dep. at 52-53 ("Q. Let's look at Paragraph 3. A. Yes. Q. The last sentence of Paragraph 3 says: "Although I am still alive, those treatments have had a devastating effect on both my physical and cognitive abilities which continue to render me totally disabled. Did I read that correctly? A. Correct. Q. Is that an accurate statement? A. Yes, in the sense that totally disabled to me is defined as not having reasonable accommodation to my own occupation. Q. What is – tell me all of the facts on which you base your belief that the words totally disabled mean disabled without a reasonable accommodation. A. That's – that's the point of what I make, okay.  I am disabled because no one wants to provide me the accommodation I need. Q. Who doesn't want to provide you with the accommodation you need? A. Credit Agricole.")

89.    **As part of the appeal process, Shannon told Prudential that the reason he became disabled and could not work as of January 14, 2013 was cognitive decline caused by chemotherapy he had undergone years earlier.  (Roth Decl. at ¶ 8 & Ex. G at 728.) Shannon told Prudential that "chemo brain" "was the basis for my decision to enter disability."  (*Id.*) Shannon defined "chemo brain" as "chemotherapy-induced cognitive disorder" that causes short-term memory impairment; difficulty with recall, multitasking, scheduling, being able to comprehend reading or finish sentences." (Shannon Dep. at 13-15.)**

### RESPONSE TO SUB-PARAGRAPH 89:

Disputed.    This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

90.    **In his appeal to Prudential, Shannon certified pursuant to 28 U.S.C.A. §1746, under penalty of perjury, that the reason he went on disability leave in January**

2013 was that "the chemotherapy treatments have severely diminished my cognitive functioning to where I could no longer work in my occupation or frankly in any occupation.  In particular, my chemo brain impairs my ability to maintain focus, multi-task, and recall simple facts and names in a disconnect I describe as 'on-tip-of-my-tongue'.  So impaired, it was becoming impossible for me to sell research in the fast paced environment of Wall Street and as a result, I stopped working as a salesman on January 12, 2013."  (Roth Decl. at ¶ 10 & Ex. I at ¶ 22.)

**RESPONSE TO SUB-PARAGRAPH 90:**

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 by using a portion of a paragraph from a 13 page document to claim "the reason he went on disability leave in January 2013 was, ….".  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).  Paragraph 22 reads, in its entirety: "With respect to my prior employment as a Wall Street Institutional Equity Salesman, I sold research in the fastest paced environment possible to the brightest investors in the business.  My pre-disability was $1,000,000 per year.  My occupation required superior cognitive function.  As I set forth above, the chemotherapy treatments have severely diminished my cognitive function to where I could not longer work in my own occupation or frankly yin any occupation,  In particular, my chemo brain impairs my ability to maintain focus, multi-task, and recall simple facts and names in a disconnect I describe as 'on-tip-of-my-tongue'.  So impaired, it was becoming impossible for me to sell research in the fast paced environment of Wall Street and as a result, I stopped working as a salesman on January 12, 2013.

91.  **Shannon's sworn certification to Prudential continued: "[chemotherapy] treatments have had a devastating effect on both my physical and cognitive abilities which continue to render me totally disabled" and "[a]s a result of my restrictions and**

limitations which I set forth above, I can no longer perform the material and substantial duties of any occupation for which I am reasonably suited by virtue of my education, training and experience.  Thus, without the ability to focus on details, without the ability to multi-task, without the ability to remember details, without the ability to go through a day without fatigue and without the ability to sit, stand or walk for a considerable period of time, to say nothing about my extensive travel requirements, I simply cannot work in any capacity commensurate with my attempts at work." (*Id.* at ¶¶ 3, 24.)

### RESPONSE TO SUB-PARAGRAPH 91:

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

92.    **In support of his appeal of Prudential's determination, Shannon submitted an employability evaluation conducted by Occupational Assessment Services, Inc.  (Roth Decl. at ¶ 11 & Ex. J.)  That evaluation, commissioned by Shannon, found that as of his January 14, 2013 commencement of disability leave, Shannon was not capable of performing any work existing in the local or national economy on a full-time or part-time basis and that he was totally disabled.  (*Id.* at 904-05: Mr. Shannon "cannot perform the material and substantial duties of his regular occupation or any other occupation" and "[a]s of 1/13, Mr. Shannon was no longer capable of working and was unable to perform any Sedentary, Light, Medium, Heavy, or Very Heavy Work existing in the local or national economy on a sustained, full-time or part-time, regular, competitive basis and he was considered totally disabled. This is the same conclusion reached by [the Social Security Administration], in awarding Mr. Shannon Social Security Disability Benefits. This is also supported by Dr. Furman who states 'as early as May 2011, Mr. Shannon**

reports having difficulty with cognitive function, manifesting itself as difficulty concentrating, carrying on complex tasks, multitasking, and with his short term memory.'"

**RESPONSE TO SUB-PARAGRAPH 92:**

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

93.   **On January 16, 2018, Shannon also filed a lawsuit against Prudential contesting that insurer's termination of his disability payments.  In paragraph 4 of his complaint against Prudential, Shannon alleged that he "last worked in this capacity … on January 11, 2013 due to his symptoms caused by his diagnosis of and aggressive treatment for Non-Hodgkin's lymphoma."  (Roth Decl. at ¶ 12 & Ex. K.)  At paragraph 15 of that same complaint, Shannon alleged, "As a result of Plaintiff's treatment-induced cognitive impairments, he has been unable to return to his prior occupation since January 11, 2013, his last date of work."  (*Id.*)**

**RESPONSE TO SUB-PARAGRAPH 93:**

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

94.   **Shannon's treating physician, Dr. Richard Furman, wrote to Prudential in support of Shannon's appeal that "[a]s early as May 2011, Mr. Shannon reports having difficulty with cognitive function, manifesting itself as difficulty concentrating, carrying on complex tasks, multitasking, and with his short term memory."  (Roth Decl. at ¶ 20 &**

Ex. S.)

### RESPONSE TO SUB-PARAGRAPH 94:

Not disputed for the purposes of the Motion.

95.   **Dr. Furman also informed Mass Mutual, Shannon's second disability insurer, on multiple occasions, that no accommodations existed that might allow Shannon to return to work and that he first advised Shannon to stop working at Shannon's "first complaint of cognitive dysfunction" in 2011.  (Roth Decl. at ¶ 15 & Ex. N at Questions 14 and 18.)**

### RESPONSE TO SUB-PARAGRAPH 95:

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

96.   **Dr. Furman also certified to Prudential about Shannon on March 4, 2015: "This patient's physical and mental status prevents him from working either part-time or full-time."  (*Id.* at ¶ 14 & Ex. M.)  Shannon testified that he agrees with Dr. Furman. (Shannon Dep. at 127.)**

### RESPONSE TO SUB-PARAGRAPH 96:

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

97.   **Dr. Furman, assessing Shannon during his office visits, has also stated on multiple occasions that, "[w]hile he is physically capable, he is not cognitively capable of working in his prior profession."  (Roth Decl. at ¶ 16 & Ex. O.)**

**RESPONSE TO SUB-PARAGRAPH 97:**

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

98.   **Shannon told both Prudential and Mass Mutual repeatedly – as Shannon was required to provide status updates on his disability every six months to both insurers – that he was unable to perform the specific duties that Shannon testified were essential to his job at CLSA.  (Shannon Dep. at 31-32, 61-63, 75, 80, 98-101.  He testified that he needed to read and perform a large amount of research but was unable to do so, and that he also was unable to complete thoughts or sentences.  (Shannon Dep. at 75-78.)**

**RESPONSE TO SUB-PARAGRAPH 98:**

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

**Shannon Complains of Alleged Discrimination in a January 2, 2013 Letter from His Lawyer**

**RESPONSE TO DEFENDANT'S SUB-HEADER:**

Defendant's Sub-Header is not a purported statement of undisputed fact.  Rather, Defendant improperly inserts this Sub-Header into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 as part of an effort to persuade the reader as to the validity of Defendant's arguments.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

99.   **Shannon   never   told   Human   Resources   that   he   had   experienced**

**discrimination or other unlawful workplace conduct.  (Bannon Decl. at ¶ 9.)  Nor did Human Resources learn from any source before Shannon filed an EEOC Charge that Shannon believed he had experienced discrimination or any other wrongful conduct. (*Id.*)**

### RESPONSE TO SUB-PARAGRAPH 99:

Disputed.  The evidence in the record refutes this purported statement of undisputed fact, because Plaintiff complained to Alan Garcia, CAS HR, during the November 2013 Termination Meeting.  See Hayes Dep., Page 84.

100. **While Shannon alleges that on November 20, 2012 he provided his "supervisors with a formal written complaint about the apparent discrimination that he was being subjected to in the workplace" (Am. Compl. ¶ 36) and Shannon verified this allegation under oath in interrogatory responses (Roth Decl. at ¶ 3 & Ex. B), Shannon testified at his deposition that his first written complaint in actuality was a letter from his lawyer dated on or about January 2, 2013 (Shannon Dep. at 283-284), weeks after Shannon had already elected to take a disability leave.**

### RESPONSE TO SUB-PARAGRAPH 100:

Disputed. The evidence in the record refutes this purported statement of undisputed fact.  *See* Plaintiff 155.

This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

101. **Shannon filed an EEOC Charge against CAS on September 29, 2014 – far more than 300 days after the last adverse action Shannon alleges against CAS.  (Docket No. 29; Shannon Dep. at 254; Hayes Dep. at 141; Roth Decl. at ¶ 7 & Ex. F.) Shannon**

filed an EEOC Charge naming CAS's French parent CACIB and a company called CLSA Asia Pacific Markets, Inc. on August 30, 2013; CAS is not mentioned in this Charge. (Roth Decl. at ¶ 7 & Ex. F.)

**RESPONSE TO SUB-PARAGRAPH 101:**

Disputed. This purported statement of undisputed fact improperly inserts Defendant's arguments and conclusions into Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1.  See Pacenza v. IBM Corp., 04-CIV-5831 (SCR), slip op. at 8-9 (S.D.N.Y. July 26, 2007).

102. **Shannon admits that at the time of Shannon's November 29, 2012 meeting with Plourde when Plourde told Shannon his job would be cut, Shannon no longer had lymphoma. (Shannon Dep. at 124.)  Shannon's lymphoma has not returned as of the date of his deposition in December 2018 (*id.*) and, upon information and belief, has not recurred to this day**.

**RESPONSE TO SUB-PARAGRAPH 102:**

Disputed.  The evidence in the record refutes this purported statement of undisputed fact, because cancer being in a state of remising is not the equivalent to "no longer having," cancer.

103. **Shannon was represented by a well-known employment law firm, Liddle & Robinson, from at least December 2012 through at least April 2013. (Roth Decl. at ¶ 7.)  Shannon testified that he discussed the filing of an EEOC Charge with Liddle & Robinson but then decided to fire that firm. (Shannon Dep. at 312-13.**

**RESPONSE TO SUB-PARAGRAPH 103:**

Not disputed for the purposes of the Motion.

Dated: November 22, 2019

New York, NY

Respectfully Submitted,

**THE OTTINGER FIRM, P.C.**

_____
Benjamin D. Weisenberg
450 Lexington Ave. – 4th Floor
New York, New York 10017
Telephone: (917) 747-5303
Facsimile: (212) 571-0505
benjamin@ottingerlaw.com

*COUNSEL FOR DEFENDANTS*