USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/21

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Parker Shannon, <br><br>                    Plaintiff, <br><br>         –v– <br><br> Credit Agricole Securities (USA), INC., <br><br>                    Defendant. | 17-cv-00667 (AJN) <br><br> MEMORANDUM OPINION & ORDER |

ALISON J. NATHAN, District Judge:

     Plaintiff brings claims under the Americans with Disabilities Act against his former employer for allegedly terminating him because of his cancer diagnosis. Defendant moves for summary judgment on the grounds that Plaintiff's ADA claims fail as a matter of law and because they are time-barred. For the reasons that follow, Defendant's motion is GRANTED.

**I.    BACKGROUND**

    **A.  Facts**

     The facts in this section are drawn from Defendant's Rule 56.1 statement and are undisputed unless otherwise stated. As explained in section II.A. of this Opinion, the Court will not consider a fact to be "in dispute" if Plaintiff has provided only (a) a conclusory citation to evidentiary or procedural rules without any explanation or justification for the objection or (b) a citation purportedly to the record that provides the Court no reasonable means to locate the document and without any explanation of what the document is.

Defendant Credit Agricole Securities, Inc. ("CAS") is a New York corporation and a U.S. Broker dealer. Dkt. No. 107 at 4. CLSA Limited ("CLSA") is a Hong Kong-based entity, with offices in multiple Asian countries, New York, and London. *Id.* at 5. Plaintiff was hired by one or both companies in 2007 (the parties dispute which one) as a salesman and a specialist with regards to Korea and Taiwan. *Id.* at 20. *Id.* Plaintiff's duties generally included researching and reviewing financial data and news and working with clients. *Id.* at 23. Plaintiff was a "key relationship manager" on five accounts and a "Korea / Taiwan specialist" on six or seven. *Id.* at 32.

In 2008, Plaintiff was diagnosed with a form of cancer called non-Hodgkin's lymphoma and began treatment. *Id.* at 24. Plaintiff was told by Jay Plourde, his supervisor, to take as much time off as he needed regarding his health. *Id.* Plaintiff lost all of his hair but it grew back within a year. *Id.* at 25. According to Defendant, by 2010, Plaintiff's supervisors were under the impression that Plaintiff no longer had cancer. *Id.* Plaintiff disputes this fact and claims Plaintiff that his supervisors were well aware of the fact that he still had cancer past this point, as he regularly discussed his cancer diagnosis and treatment with them, and that it was not until September 2012 that he no longer had active Lymphoma. *Id.*

From 2010 to 2011, Defendant's management team in Asia made job cuts for New York workers as a result of restructuring. *Id.* at 28. In 2011, management proposed that Plaintiff be terminated and Plourde advocated on behalf of Plaintiff that he be able to keep his job. *Id.* at 28-29. Plaintiff stayed on the job until 2012, when CLSA management engaged in more job cuts. *Id.* at 29. In or around October 2012, Defendant agreed to a merger with a Chinese company, and in preparation for that sale consolidated its Korea and Taiwan related functions to the North

2

Asian office. *Id.* at 29-30.  Plourde was told in June 2012 that Plaintiff's job would be eliminated.  *Id.* at 30.

Plourde waited until November 29, 2012 to inform Plaintiff of his termination. *Id.* According to Defendant, Plaintiff then informed Plourde that he still had cancer, which Plourde was not aware of until that conversation.  *Id.* at 31.  Plaintiff disputes this fact and claims that Plourde was already aware that he had cancer well before that time.  Plourde then told Plaintiff that he could forget about termination and return to work while Plourde looked for another position for him.  (According to Plaintiff, Plaintiff has had no active lymphoma since at least September 2012.  *Id.* at 33-34.).

On November 30, 2012, Plourde told management in Hong Kong about Plaintiff's cancer, and Plourde was permitted to try and find Plaintiff another job.  *Id.* at 34. Plourde found a job for Plaintiff as "Head of Syndications."  *Id.* at 35.  Plourde and Plaintiff exchanged emails regarding this position on December 13, 2012.  *Id.* at 37.  On December 17, 2012, Plaintiff contacted Human Resources to request a disability leave and on December 20, 2012 Plaintiff told human resources that he intended to begin disability leave in January 2013.  *Id.*

In his Amended Complaint and responses to Defendant's interrogatories, Plaintiff maintained that on November 20, 2012 he provided his supervisors with "a formal written complaint about the apparent discrimination that he was being subjected to in the workplace." *Id.* at 60.  Plaintiff has admitted in sworn testimony that he did not mention his disability in this complaint. Dkt. No. 109 ¶ 24.  In his deposition testimony, Plaintiff stated that his first written complaint regarding his disability was instead a written letter from his lawyer dated January 2, 2013, which was after Plaintiff had elected to take disability leave.  *Id.* ¶ 33.  Defendants responded to this letter in a letter on January 4, 2013, stating that Plaintiff was not terminated

3

due to his disability and that, though he had been terminated in November 2012, Defendants were willing to keep him on as an employee through February 2013. Dkt. No. 115-6, Pl. Ex. N.

Plaintiff then applied for and received "short-term disability benefits" from Defendants, which permitted a 100% salary continuation for up to 26 weeks. Dkt. No. 107 at 37-38. The insurance company Prudential administered the plan, and as would decide whether Plaintiff was eligible. *Id.* Plaintiff had to provide medical records and information to show his eligibility for the disability benefits to Prudential. *Id.* Plaintiff certified in his application to Prudential that he had fatigue, anxiety, and loss of cognitive ability, including difficulty concentrating, multi-tasking, word retrieval and recalling simple facts. *Id.* at 41.

Plaintiff's short term disability leave began on January 14, 2013. *Id.* at 39-40. Plaintiff chose this date to begin voluntary leave. *Id.* Plaintiff remained employed by Defendants during this time. *Id.* at 44-45. Defendant did not hire anyone to fulfill Plaintiff's job at any point after he was gone. *Id.* at 43.

Plaintiff also applied for supplemental disability benefits through a second insurance company on February 2013, in which he certified that he was totally unable to work because of his disability as of January 14, 2013 and that he had "fatigue and cognitive d[y]sfunction" which were "making travel difficult, including staying awake in client meetings" and "difficult to read research to properly influence client decisions." *Id.* at 41. Plaintiff's treating physician submitted a statement in support of this application, stating that he advised Plaintiff to stop working at that time because of these issues. *Id.*

As part of the salary continuation in his short-term disability benefits, Plaintiff continued to be paid his regular salary by Defendants. *Id.* at 48. Around March 2013, Plaintiff received a

4

$140,000 bonus from CAS or CLSA, and other New-York based workers received similar payments. *Id.* at 45.

After the short-term disability leave ended, Plaintiff began to receive long term disability benefits from Prudential. *Id.* at 51.  In order to receive these benefits, Plaintiff had to show that he was "unable to perform the material and substantial duties of [his] own occupation due to [his] sickness or injury." *Id.* at 51.  After 24 months, to continue receiving benefits he had to show that he was "unable to perform the duties of any occupation for which [he is] reasonably fitted by education, training, or experience."  *Id.*  Plaintiff never reached out to Defendants to inform them that he could return to work in any position.  *Id.* at 52-53.

Plaintiff's long term disability payments were terminated by Prudential on August 26, 2015, when Prudential learned that Plaintiff had begun work as a CEO of a new business.  *Id.* Plaintiff appealed this decision, and in that appeal he and his physician argued that he was unable to perform work in any occupation at all because he was "totally disabled."  *Id.* at 53.  Plaintiff explained that he was "totally disabled" because of "chemo brain," which is a cognitive disorder caused by chemotherapy.  *Id.* at 54. Plaintiff certified under penalty of perjury that:

> "the chemotherapy treatments have severely diminished my cognitive functioning to where I could no longer work in my occupation or frankly in any occupation. In particular, my chemo brain impairs my ability to maintain focus, multi- task, and recall simple facts and names in a disconnect I describe as 'on-tip-of-my- tongue'. So impaired, it was becoming impossible for me to sell research in the fast paced environment of Wall Street and as a result, I stopped working as a salesman on January 12, 2013 . . . [chemotherapy] treatments have had a devastating effect on both my physical and cognitive abilities which continue to render me totally disabled" and "[a]s a result of my restrictions and limitations which I set forth above, I can no longer perform the material and substantial duties of any occupation for which I am reasonably suited by virtue of my education, training and experience. Thus, without the ability to focus on details, without the ability to multi-task, without the ability to remember details, without the ability to go through a day without fatigue and without the ability to sit, stand or walk for a considerable period of time, to say nothing about my

5

>extensive travel requirements, I simply cannot work in any capacity commensurate with my attempts at work."

*Id.* at 54-55. Plaintiff's physician informed Prudential and Mass Mutual that Plaintiff reported having the above symptoms as early as May 2011. *Id.* at 57.

### B. Procedural History

Plaintiff filed an Amended Complaint on May 9, 2017, bringing claims for discrimination and retaliation under the ADA, NYSHL, and NYCHRL. Dkt. No. 20. Defendant filed a motion to dismiss on May 22, 2017. Dkt. No. 21. In an Opinion on March 22, 2018, the Court granted Defendant's motion in part and dismissed all claims except for Plaintiff's ADA claims. Dkt. No. 29. The parties proceeded to discovery, and Defendant now moves for summary judgment as to all remaining claims. Dkt. No. 89. Plaintiff filed an opposition to Defendant's motion, as well as a motion to strike Defendant's Rule 56.1 Statement. Dkt. Nos. 106-107, 114.

## II. DISCUSSION

Defendant moves for summary judgment on the remaining claims in Plaintiff's Amended Complaint: Plaintiff's discrimination and retaliation claims under the American with Disabilities Act. Dkt. No. 90 at 7. For the reasons that follow, the Court determines that there are no genuine disputes of material fact and that Defendant is entitled to judgment as a matter of law on Plaintiff's ADA claims. Because the Court grants Defendant's summary judgment on these grounds, it need not consider Defendant's argument that Plaintiff's claims are time-barred. The Court also denies Plaintiff's Motion to Strike for the reasons stated below.

### A. Plaintiff's Objections to Defendant's Rule 56.1 Statement

Plaintiff has filed both a motion to strike portions of Defendant's Rule 56.1 Statement and responses to each purported undisputed fact. Dkt. No. 107, 114. Plaintiff has formally disputed virtually all facts asserted by Defendant.

"[E]vidence considered on summary judgment must generally be admissible." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). The Federal Rules of Civil Procedure Rule 56, as amended in 2010, allows that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). As the Advisory Committee Notes attendant to that provision make clear, "[t]here is no need to make a separate motion to strike" in addition to that objection. *See* Advisory Committee Note to Fed. R. Civ. P. 56.

To the extent that Plaintiff argues that Defendant's Rule 56.1 statement relies on inadmissible evidence, because inadmissible evidence "is insufficient to create a genuine dispute of material fact," the Court "need not engage in separate analysis of the motion to strike." *Codename Enterprises, Inc. v. Fremantlemedia N. Am., Inc.*, No. 16CIV1267ATSN, 2018 WL 3407709, at *4 (S.D.N.Y. Jan. 12, 2018). To the extent the Plaintiff otherwise argues that Defendant's Rule 56.1 statement should be stricken because it contains "improper arguments," the burden for demonstrating the necessity of such a remedy is high. *See Christians of California, Inc. v. Clive Christian New York, LLP*, No. 13-CV-275 KBF, 2014 WL 3407108, at *2 (S.D.N.Y. July 7, 2014) ("A party seeking to strike a Rule 56.1 statement 'bears a heavy burden, as courts generally disfavor motions to strike.'").

In Plaintiff's motion to strike, Dkt. No. 114, Plaintiff listed nearly 50 statements from Defendant's Rule 56.1 submission and "objects" on the grounds of "hearsay" or "improper argument" by providing a corresponding citation to either the Federal Rules of Evidence 801-

7

803, the Undersigned's Individual Rules 3.G.v, Federal Rule of Civil Procedure 56(c)(2), *Pacenza v. IBM Corp.*, No. 04 CIV. 5831 (SCR), 2007 WL 9817926, at *2 (S.D.N.Y. July 26, 2007) (a case that was decided prior to the 2010 amendments to Rule 56), or a combination of the above. Aside from these bare citations, Plaintiff declined to provide *any* explanation or justification for why each statement is based on inadmissible or otherwise improper. Plaintiff makes the same or similar objections to the corresponding facts in his response to Defendant's Rule 56.1 Statement. Dkt. No. 107.

Because "[a]sserting an issue without advancing an argument does not suffice to adequately raise" it, *Casciani v. Nesbitt*, 392 F. App'x 887, 889 (2d Cir. 2010), the Court declines to deem any statements inadmissible solely on the basis of Plaintiff's indolent objections. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 20 CV 1186-LTS, 2020 WL 5370576, at *4 (S.D.N.Y. Sept. 8, 2020) (declining to consider an issue where a party did "not provide any explanation or proffer any support for these conclusory arguments."); *Tolbert v. Queens Coll.,* 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted). Instead, when determining whether a material fact is in dispute, the Court will consider all arguments properly advanced in the parties' submissions as to the admissibility of evidence cited in support of those factual allegations. *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (to create "doubt as to the material facts," a party "may not rely on conclusory allegations or unsubstantiated speculation.").

Moreover, in Plaintiff's response to Defendant's Rule 56.1 Statement, Dkt. No. 107, Plaintiff provides some record citations that provide no discernable method for the Court to locate the documents because there is no reference to the docket number, filing, submission, or

8

any other indicator of the documents' location.[1]  Specifically, at times Plaintiff references what appear to be bates stamps ranges but does not explain what the documents are or where they can be found.  *See, e.g.,* Dkt. No. 107 at 37, 41.  By citing unidentifiable documents without explanation, Plaintiff "leaves it to the Court to hunt down the evidence to evaluate Plaintiff's conclusory argument."  *Florkevicz v. Comm'r of Soc. Sec.*, No. CV 19-19919 (SRC), 2020 WL 3867409, at *2 n.1 (D.N.J. July 9, 2020).  *See also Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995) ("It is not this court's burden to hunt down the pertinent materials.").  Because "nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment," and as such "district courts are entitled to order" – and this Court *has* ordered – "litigants to provide specific record citations," *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002), Plaintiff's failure to provide functioning citations may result in some instances in a fact being undisputed.

### B.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment as to Plaintiff's ADA discrimination and retaliation claims.  "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non- moving party." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015).  Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the Court must view all facts in the light most favorable to the non-moving party.

---

[1] Plaintiff also on at least one occasion disputed a fact with "[Need citation here.]".  Dkt. No. 107 at 53.

*See Eastman Kodak Co. v. Image Techn. Servs., Inc.*, 504 U.S. 451, 456 (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d. 46, 48 (2d Cir. 2015). In evaluating cross-motions for summary judgment, each motion must be examined "on its own merits," and "all reasonable inferences must be drawn against the party whose motion is under consideration." *Vugo, Inc. v. City of New York*, 931 F.3d 42, 48 (2d Cir. 2019) (internal quotations and citations omitted).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quotations omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007). The same is true for "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

Only disputes over material facts will "preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). "On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).

1. **Plaintiff's Discrimination Claim**

The ADA provides "that no covered employer 'shall discriminate against a qualified individual on the basis of disability . . . in regard to . . . [the] discharge of employees.'" *Clark v.*

*Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 248 (S.D.N.Y. 2015) (citing 42 U.S.C. § 12112(a)). "In analyzing a discriminatory discharge claim under the ADA, [courts] apply the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)," under which the "plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination," and then "[t]he burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action." *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (internal citations omitted). "If the defendant proffers such a reason, the presumption of discrimination drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (alterations and internal quotation marks omitted).

"To establish a prima facie case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Heyman*, 198 F.3d at 72 (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998)).

Defendant does not contest the first two elements of Plaintiff's prima facie case for the purposes of this motion. Dkt. No. 90 at 7. The Court determines that there are no genuine

11

disputes of any material facts and that Plaintiff has failed to meet his initial "burden of production" for establishing the other two elements. *Heyman*, 198 F.3d at 72.

### a. Third Element: Qualified to Perform Essential Job Functions

Plaintiff maintains that his job position was "Key Relationship Manager" and that he was qualified to perform that job, with reasonable accommodations, when it was taken away from him on November 29, 2012. Dkt. No. 106 at 12-13. However, Plaintiff's contention that he was able to perform his job as "key relationship manager" is in direct conflict with his sworn statements made to the Social Security Administration, Prudential, and Mass Mutual in obtaining his disability benefits that, as a result of chemotherapy, Plaintiff had suffered serious disability in his cognitive functioning that rendered him incapable of performing in his occupation or *any* other occupation. Dkt. No. 107 at 50-54 ("the chemotherapy treatments have severely diminished my cognitive functioning to where I could no longer work in my occupation or frankly in any occupation").

Moreover, as explained *supra* II.A., Plaintiff's objections to the introduction of these statements are entirely conclusory and unsupported by any explanation for why the underlying evidence is inadmissible. As Plaintiff provides no evidence to rebut Defendant's claim that Plaintiff made these statements or otherwise provide an explanation as to their veracity, the Court concludes that there is no genuine dispute of material fact as to whether Plaintiff made these statements. *See Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.").

To be sure, Plaintiff's statements to the Social Security Administration, Prudential, and Mass Mutual that he is totally disabled and cannot work "do not necessarily bar [him] from

12

claiming in an ADA action that he can perform the essential functions of the job at issue." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 333 (2d Cir. 2000) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999)). However, because Plaintiff's earlier statements to these entities "directly contradict the allegations made in" this ADA lawsuit, Plaintiff "must offer some explanation for the inconsistency" that is "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of the job, with or without 'reasonable accommodation'" in order to "defeat summary judgment." *Id.* (citing *Cleveland*, 526 U.S. at 802).

     Plaintiff has failed to make this showing. Plaintiff has sworn under oath that he had suffered serious cognitive impairment that affected his ability to read research and recall basic facts, and Plaintiff provides no discernable explanation of how he can perform the essential functions of the key manager role without those abilities or why this job is an exception to his statement that he cannot perform in any occupation. Moreover, though Plaintiff points out that he was terminated from his preferred position on November 29, 2012, two months before he began disability leave, he points to nothing in the record to explain why he was "totally disabled" in January of 2013 but not in November of 2012. He at no point claims or points to evidence in the record that his condition deteriorated in that two-month period, and in fact the undisputed evidence in the record shows that Plaintiff began chemotherapy in 2008 and complained of cognitive dysfunction as early as May 2011. Therefore, the Court concludes that there is no genuine dispute that Plaintiff was totally disabled during this time period.

     To be sure, even though he was totally disabled, Plaintiff may still have been "qualified to perform the essential functions of his job" with "a reasonable accommodation." *Heyman*, 198

13

F.3d at 72. Plaintiff argues that he requested that his employer "find someone else to perform certain Korea and Taiwan specialist functions," so that he could perform only the "key manager role." Dkt. No. 106. at 7. However, eliminating one of Plaintiff's key job roles that he was hired to do is not a "reasonable accommodation." To the contrary, this is the *removal* of a job function, not an accommodation for performing one. *See Turowski v. Triarc Companies, Inc.*, 761 F. Supp. 2d 107, 112 (S.D.N.Y. 2011) ("While a reasonable accommodation may include adjustments such as the modification of physical facilities, work schedules or equipment or job restructuring, reasonable accommodation does not mean the elimination of any of the position's essential functions.") (citing *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991)); *Jasany v. U.S. Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985) ("The post office was not required to accommodate [the plaintiff] by eliminating one of the essential functions of his job.). And while "[t]he ADA lists reassignment to an existing, vacant position as a possible reasonable accommodation, 42 U.S.C. § 12111(9)(B)," the ADA "does not require creating a new position for a disabled employee." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006).

Second, even if this were to be considered a "reasonable accommodation" in theory, Plaintiff has still not shown that with it he would be "qualified to perform the essential functions of his job," *Heyman*, 198 F.3d at 72, because he provides no explanation of how his disability to his cognitive functioning made him unable to complete the specialist Taiwan and Korea functions but not the key manager functions. In sum, because there is no genuine dispute of fact that Plaintiff was totally disabled during this time period and that there was no accommodation that could enable him to perform his duties, the Court concludes as a matter of law that Plaintiff was not "qualified to perform the essential functions of his job." *Id.*

### b. Fourth Element: Adverse Action because of Disability

Although the conclusion above is sufficient to dismiss Plaintiff's discrimination claim, the Court also concludes that there is no genuine issue of material fact that the Defendant took adverse action against the Plaintiff because of his disability. For the fourth element of his claim, Plaintiff must show that he "suffered adverse employment action because of his disability," *Heyman*, 198 F.3d at 72. "[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019). Once "Defendant proffers a legitimate reason for Plaintiff's termination, the burden shifts to Plaintiff to demonstrate that the reason Defendant offers is merely a pretext for discrimination." *Clark*, 96 F. Supp. 3d at 254-55 (citing *Heyman*, 198 F.3d at 71) (quotations omitted). In analyzing whether there is discriminatory intent, the Court may look to factors such as whether the Defendant hired a new person of similar qualifications after Plaintiff's discharge, criticized the Plaintiff's performance in disability-related degrading terms, or engaged in "more favorable treatment of employees not in the protected group." *Exarhakis v. Visiting Nurse Serv. of New York*, No. 02-CV-5562 (ILG), 2006 WL 335420, at *11 (E.D.N.Y. Feb. 13, 2006) (quoting *Chambers v. TRM Copy Centers Corporation*, 43 F.3d 29, 37 (2d Cir. 1994)).

Plaintiff claims that his supervisors were aware of his cancer diagnosis, as evidenced by Plaintiff's testimony that he told them about it, and that he was terminated from his preferred position in November 29, 2012 as a result. Defendants have offered a "legitimate reason for Plaintiff' termination" in response, *Clark*, 96 F. Supp. 3d at 254-55, which is that he was not terminated for any reason related to his disability but because his position, along with those of other employees, was to be eliminated as a result of restructuring of the company.

Plaintiff has not provided evidence from which a reasonable jury could conclude that Defendant's purported reason for termination was pretextual. As purported evidence of discriminatory intent, Plaintiff claims that his salary had been decreasing each year starting in 2009 after his diagnosis in 2008. Dkt. No. 106 at 13-14, 28. However, Defendant explains that the company's struggles following the financial crisis in 2008 led to salary and bonus decreases for almost all employees. Dkt. No. 107 at 28. Plaintiff has not "allege[d] that defendants treated [him] differently from non-disabled employees, [n]or that defendants' practices have a disparate impact upon disabled employees relative to non-disabled employees." *Brennen v. Comptroller of State of N.Y.*, 100 F.3d 942 (2d Cir. 1996).

In fact, to the contrary, the only conclusion a reasonable jury conclude reach from the undisputed facts in the record is that there was an absence of discriminatory intent for termination of Plaintiff from his preferred position on November 29, 2012. Defendant never hired someone else to fill his position and Plaintiff's supervisor was also terminated a year later. Dkt. No. 107 at 43, 50. Additionally, when Plaintiff was initially terminated as a result of the layoffs, his supervisors strived to find him another position in the company, which he was offered and accepted. Plaintiff was permitted to and took full advantage of the disability leave provided by Defendants in 2013. Therefore, the material facts established in the record on this issue – none of which are meaningfully disputed – do not give rise to an inference of discrimination. *See Exarhakis,* 2006 WL 335420, at *11 (determining that the plaintiff's allegations "do not give rise to a rational inference of discrimination, especially in the context of the other events that transpired, including [defendant] offering her gratuitous leaves of absence, creating a new position for her, allowing her a tremendous amount of flexibility in the work

created for her, and reviewing her work positively."). The Court concludes as a matter of law that Plaintiff did not suffer an adverse employment action as a result of his disability.

* * *

Based on the undisputed facts in the record, no reasonable jury could conclude that the Plaintiff was qualified to perform the essential functions of his job or that any adverse employment action was taken against him because of his disability, both of which are required for a claim of discrimination under the ADA. Defendant is therefore entitled to summary judgment on Plaintiff's discrimination claim.

    **2. Plaintiff's Retaliation Claim**

Plaintiff also brings a claim for retaliation under the ADA. The statute "provides that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "A prima facie case of retaliation under the ADA is made up of the following elements: (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) (internal quotations omitted). "Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002). Then, "[i]f a defendant meets this burden, 'the plaintiff must point to evidence that would be sufficient

to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Id.* (citing *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)).

Plaintiff claims that there were two retaliatory events arising out of his complaints to supervisors regarding their alleged discriminatory treatment. Dkt. No. 106 at 17-18. First, he states that he made a "plain English written complaint" regarding the alleged discrimination in his November 20, 2012 employee performance review, and that he was subsequently terminated from his preferred position on November 29, 2012. *Id.* However, this complaint, which was contained in an "employee performance review," Dkt. No. 106 at 18, was not "protected activity" under the ADA. "Protected activity is action taken to protest or oppose statutorily prohibited discrimination." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (quotations omitted). Plaintiff himself admits in sworn testimony that he did not reference his disability in this document, Dkt. No. 109 ¶ 24, and there is therefore no genuine dispute that Plaintiff did not "protest or oppose statutorily prohibited" discrimination in the November 20, 2012 complaint. Moreover, even if Plaintiff had established a prima facie case of retaliation on this claim, as discussed *supra* II.B.1.b, Defendant has proffered a legitimate reason for Plaintiff's termination and Plaintiff has not "point[ed] to evidence that would be sufficient to permit a rational factfinder to conclude that" Defendant's explanation for the firing is pretextual. *Treglia*, 313 F.3d at 721.

As to the second alleged retaliatory event, Plaintiff made a formal complaint regarding the alleged discrimination on January 2, 2012 through his attorney. Defendant responded in a January 4, 2013, letter stating that Plaintiff had not been terminated on the basis of his disability, and that the company was willing to keep him employed until the end of February 2013. Dkt. No. 115, Exhibit N.

18

However, Defendant's January 4, 2013 letter was not an "adverse employment action." The Second Circuit defines an adverse employment action as a "materially adverse change in the terms and conditions of employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). By the time the above correspondence occurred, Plaintiff had already been terminated and therefore the action did not constitute a "materially adverse change" in the terms and conditions of his employment. *Boyle v. McCann-Erickson, Inc.*, 949 F. Supp. 1095, 1104-05 (S.D.N.Y. 1997). (holding that where a plaintiff "had already been terminated," an "alleged decision" not to hire him for freelance work was not an adverse employment action because it "did not [a]ffect his employment nor hinder him in any way from enforcing his rights."). *See also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").

Indeed, the action was not "adverse" at all considering that Defendant extended to Plaintiff the opportunity to continue working through February 2013. And the fact that this opportunity was only temporary also does not constitute an adverse employment action, because Plaintiff was not entitled to any further employment after he had been lawfully terminated from his preferred position on November 12, 2012. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006) ("[T]he ADA did not require [the defendant] give [the plaintiff] this new position for any longer than it did," because "[g]iven that the ADA does not require creating a new position for [the plaintiff] at all," it does not "dictate the duration of a new position that his employer created for him as a matter of grace."). The Court therefore concludes, based on the

19

undisputed facts in the record, that Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

## III.   CONCLUSION

For the reasons described above, Defendant's motion for summary judgment is GRANTED.  Plaintiff's Motion to Strike is DENIED.  This resolves Dkt. Nos. 89, 114.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: March 19, 2021
New York, New York

_____
ALISON J. NATHAN
United States District Judge